MOORE *v.* FLEISCHMAN YEAST CO.

1. MASTER AND SERVANT — INDEPENDENT CONTRACTOR — CONTROL — PAY.

  Janitor suffering injury to heel while removing ashes *held,* employee and not an independent contractor where employer retained right of control as to how and by whom the work was done although janitor received his pay from sale of waste he hauled away with equipment which he furnished.

2. SAME—CLAIM RAISED FOR FIRST TIME ON APPEAL.

  Suspension of compensation *as of date janitor refused antisyphilitic treatment for injury to heel was refused, urged for first time on appeal from department of labor and industry, is denied where defendants failed to follow provisions of de-

partment's rule No. 15, requiring an answer in reasonable detail as to all essential grounds of defense and defendants' principal claim was that employer-employee relation did not exist.

3. SAME—MOTION TO DISMISS—DELAYED TRANSCRIPT.

Denial of defendants' motion to dismiss plaintiff's appeal to full department, made after belated transcript was filed amounted to an extension of time for filing same where finding was made by department that delay beyond time allowed by its rule No. 16 was excused by circumstances.

4. SAME—AVERAGE WEEKLY EARNINGS—DEDUCTIONS—CONSTRUCTION OF STATUTE.

In determining average weekly wage of janitor paid by proceeds he received from sale of waste material but which necessitated his hiring a horse to haul it away, sum paid for horse hire is deducted from gross earnings and compensation computed on balance notwithstanding workmen's compensation act is silent on the subject since it is not to be interpreted as authorizing payment during disability of more than his net average weekly wage.

Appeal from Department of Labor and Industry. Submitted June 19, 1934. (Docket No. 89, Calendar No. 37,823.) Decided October 1, 1934.

John Moore presented his claim against Fleischman Yeast Company, employer, and Employer's Liability Assurance Corporation, insurer, for an accidental injury while in defendant's employ. Award to plaintiff. Defendants appeal. Modified and remanded.

*Gloster, Giller & Briggs,* for plaintiff.

*Mason, Alexander, McCaslin & Cholette (E. Dean Alexander,* of counsel), for defendants.

BUTZEL, J. The Fleischman Yeast Company and its insurer appeal from an order of the department

of labor and industry awarding John Moore compensation of $17.33 per week. As they claim that the relation of employer and employee never existed and that Moore was either an independent contractor or at most a licensee, we shall briefly review the testimony.

The company employed 34 salesmen at its branch in Detroit where they assembled each day and as they removed the coffee, etc., required for the day's business from the containers, they scattered the broken cartons, boxes, waste paper, and tin foil on the floor of the premises and sidewalk leading thereto. Later in the day, passing junkmen would collect this waste material without cleaning up the premises.

One day, while Moore was driving a horse and wagon, the company's foreman hailed him and stated that he was looking for "a man to do the janitor's work on the first floor, keep the paper cleaned up, sweep the place out and clean the office out." He was to haul the waste away, dispose of it as it had a market value, and as compensation for his work he could keep the proceeds. Moore agreed to the proposal, went to work and realized the sum of $25 per week from the sale of the waste materials. He was obliged to be at the plant at 5 a. m., work for from 4 to 5 hours, then return again at 5 p. m., and again work an equal length of time. After working three weeks he was given the additional job of removing the ashes, for which he was paid the sum of $1 per week, thus bringing his gross earnings to $26 per week. Once when tardy on account of slippery weather, he was reprimanded by the foreman and told that the place had to be kept clean, because the inspectors came in each day; that if he could do this, he could keep the job, otherwise, he would be replaced. He further was obliged to remove the

paper from the cans in the lavatory, sweep it out, see that all the hand trucks were in the garage at nighttime and if not in, then to bring them in and line them up, sweep all the places from which he took the paper, etc., and dust the shelves. One day while bringing up cans of ashes from the basement, his foot was caught in the elevator and the flesh was torn off at the heel. The testimony shows that Moore was not an independent contractor or licensee. He was hired to do the work of a janitor. The fact that the employer retained the right of control over his work is very persuasive of an employer-employee relationship. *Tuttle* v. *Embury-Martin Lumber Co.,* 192 Mich. 385 (Ann. Cas. 1918 C, 664); *Zoltowski* v. *Ternes Coal & Lumber Co.,* 214 Mich. 231. The fact that Moore received his pay through hauling away the waste materials with horse and wagon furnished by him does not make him an independent contractor. The relationship is somewhat analogous to hauling by teamsters who use their own horses and wagons and receive a stipulated price per load. We have held that under certain circumstances they were employees. *Tuttle* v. *Embury-Martin Lumber Co., supra; Van Simaeys* v. *George R. Cook Co.,* 201 Mich. 540; *Warner* v. *Fullerton-Powell Hardwood Lumber Co.,* 231 Mich. 328; *Dennis* v. *Sinclair Lumber & Fuel Co.,* 242 Mich. 89. At the time Moore was employed, it was recognized that the waste material could be readily sold, that Moore was to haul it away and keep the proceeds from its sale, in return for doing the janitor's work. Under the circumstances, he was receiving the equivalent of cash for his services. Moore was at all times subject to the company's control, he could not substitute someone else in his place, he could be discharged at any time without a breach of contract. We are in accord

with the department's findings as to the employment relationship.

Appellants contend that although Moore's injury was serious, it did not affect the bone, and that, were it not for a syphilitic condition, it would have been cured within a comparatively short time; that anti-syphilitic treatment was necessary to condition the blood so as to permit the healing, and that during the period he submitted to such treatment his condition improved; that he stopped taking the treatment and has, therefore, made no further progress. They therefore claim that compensation should have been suspended from the time when Moore refused to submit to such further treatment. See *Kricinovich* v. *American Car & Foundry Co.,* 192 Mich. 687; *O'Brien* v. *Albert A. Albrecht Co.,* 206 Mich. 101 (6 A. L. R. 1257); *Myers* v. *Wadsworth Manfg. Co.,* 214 Mich. 636. Defendants, however, raise this claim for the first time on the appeal to this court. The department of labor and industry adopted rules of practice and procedure for carrying out the provisions of the workmen's compensation act. Rule No. 15 provides that if the employer or insurer deny liability, they must file an answer setting forth with reasonable detail and certainty all the essential grounds of defense, to which they will be limited both on the hearing before the deputy and on review before the commission, unless in exceptional cases and for good cause shown an amendment is permitted to be filed. Appellants based their defense almost exclusively on the ground that there was no employment. Appellants gave no notice of this additional ground of defense and plaintiff was not bound to meet it. *Roach* v. *Kelsey Wheel Co.,* 200 Mich. 299.

It is further claimed by appellants that plaintiff filed his claim of appeal to the full department on

June 1, 1933, but did not file the transcript of testimony until December 6, 1933. The rule of the department (Rule No. 16) provides that the transcript should be filed within 20 days after the claim of appeal is filed. The time may be extended for good and sufficient cause upon application to any commissioner of the compensation department. The rule is silent as to dismissal of the appeal if the transcript is not filed within 20 days. Appellants made no motion to dismiss during the entire time the filing of the transcript was delayed, nor for over a month thereafter. Had they acted promptly, plaintiff could have applied for an extension of time in which to file the transcript. The correspondence shown in the affidavit filed with the department discloses that appellants knew that the transcript had not been filed and urged that it be filed. It is not shown, though claimed, that appellants were prejudiced by the delay. Their petition to dismiss made no such claim. The full department denied the motion to dismiss, and found that the delay was excused by the circumstances. This action amounted to an extension of time. The full department could do what any one of them was empowered to do.

It was necessary for plaintiff to hire a horse in order to perform his duties which included hauling away the waste materials. Plaintiff testified as follows:

"*Q.* How much did you pay the Italian for the use of the horse?

"*A.* I didn't get it from Italian.

"*Q.* Well, whoever you got it from?

"*A.* $2 a day.

"*Q.* You paid this person $2 a day?

"*A.* That's what it would cost; I didn't pay him that."

Plaintiff's daughter claimed that the horse belonged to her six-year old son, and her father paid for the use of the horse. She testified:

"*Q.* Did your father pay you anything for the use of the horse?

"*A.* Sure, he gave me when he would have it.

"*Q.* Paid you so much a week, did he?

"*A.* Yes, and fed the horse days; when he could he would give me $2; some days he wouldn't be able to give me that much, but when he was able to give me more he would give it to me.

"*Q.* $2 a day, you say?

"*A.* Yes."

Though the testimony is not entirely clear, it indicates that Moore was to pay $2 a day for the hire of the horse required by him in order to haul away the waste. On becoming disabled he no longer was put to the expense of $2 a day, which had to come out of his earnings. If he is awarded compensation of $17.33 per week, and is also saved the hiring of a horse at $2 a day, he will be netting a larger sum per day than he received before he was disabled. Under the compensation act, an employee is entitled to receive 66 2/3 per cent. of his "average weekly wages" during total disability. The question arises whether the percentage is to be figured on the net or gross amount of the average weekly wages. We do not believe that the statute contemplated the deduction of minor expense such as the transportation to and from the place of employment, or the cost of small tools, or supplies of an inexpensive nature that an artisan is supposed to be equipped with in order to do his work. We do believe that payments for assistants or for hire of some expensive facilities necessary for the performance of the work and the cost of which is to be paid by the employee out of his wages, should be deducted in

arriving at the average weekly wages. *Roper* v. *Freke,* 84 L. J. K. B. 1351 (31 Times L. R. 507, 59 Sol. Jo. 596); *State, ex rel. Gaylord Farmers' Co-operative Creamery Ass'n,* v. *District Court of Sibley County,* 128 Minn. 486 (151 N. W. 182). Notwithstanding plaintiff's contention that the law is silent on the subject and that we should follow its exact words, we cannot adopt a construction that would more than compensate an employee and pay him during disability a sum in excess of his net average weekly wage. That is not the purport of the compensation act.

The award is set aside, with costs to defendant. The proceedings are remanded to the department of labor and industry with directions to enter an award in accordance with this opinion.

Nelson Sharpe, C. J., and Potter, North, Fead, Wiest, Bushnell, and Edward M. Sharpe, JJ., concurred.