COLEMAN v WESTERN MICHIGAN UNIVERSITY

Docket No. 61388. Submitted January 10, 1983, at Lansing.—Decided
    April 19, 1983. Leave to appeal denied, 418 Mich 872.

Willie S. Coleman, a football player at Western Michigan Univer-
    sity, was injured during the course of football practice. Cole-
    man was the recipient of an annual, renewable scholarship.
    The university honored his scholarship for the remainder of
    that school year. However, because Coleman was disabled and
    no longer able to play football, the university reduced his
    scholarship to the point where Coleman had to leave school
    because he could not financially afford to continue there. Cole-
    man applied for workers' compensation benefits limited to four
    semesters, the remainder of his college tenure at the time of
    the injury. The hearing referee denied compensation, finding
    that Coleman was not an employee of the university. The
    Workers' Compensation Appeal Board affirmed, finding no em-
    ployment relationship between the parties. Coleman appeals by
    leave granted. *Held:*

    The WCAB did not err in finding that Coleman was not an
    employee of the university within the meaning of the Worker's
    Disability Compensation Act.

    Affirmed.

1. WORKERS' COMPENSATION — EMPLOYEES — ECONOMIC REALITY TEST.
    Factors to be considered in determining whether an employment
    relationship exists within the meaning of the Worker's Disabil-
    ity Compensation Act include: (1) the proposed employer's right
    to control or dictate the activities of the proposed employee; (2)
    the proposed employer's right to discipline or fire the proposed
    employee; (3) the payment of "wages" and, particularly, the
    extent to which the proposed employee is dependent upon the
    payment of wages or other benefits for his daily living expen-
    ses; and (4) whether the task performed by the proposed em-
    ployee was "an integral part" of the proposed employer's
    business; no one factor by itself is dispositive, rather each

REFERENCES FOR POINTS IN HEADNOTES
[1] 81 Am Jur 2d, Workmen's Compensation § 152 *et seq.*
[2] 82 Am Jur 2d, Workmen's Compensation § 568.

factor must be considered in turn and all of them taken into account in determining the existence of an employment relationship (MCL 418.161[1][b]; MSA 17.237[161][1][b]).

2. WORKERS' COMPENSATION — APPEAL BOARD — FINDINGS OF FACT.
   Findings of fact of the Workers' Compensation Appeal Board are conclusive, absent a showing of fraud, if they are supported by any evidence in the record (Const 1963, art 6, § 28).

*Marston, Sachs, Nunn, Kates, Kadushin & O'Hare, P.C. (by Granner S. Ries),* for plaintiff.

*Cholette, Perkins & Buchanan (by Edward D. Wells),* for defendant.

Before: D. E. HOLBROOK, JR., P.J., and CYNAR and H. W. MOES,* JJ.

PER CURIAM. Plaintiff, a former Western Michigan University scholarship football player, appeals by leave of this Court the WCAB's decision denying him compensation for an injury received during the course of football practice. We affirm.

The WCAB found the following facts, which are undisputed on appeal:

"A talented high school athlete, plaintiff was contacted by defendant and offered an annual, renewable scholarship if he could make the football team. The scholarship consisted of full tuition, room and board and books for the school year. Plaintiff accepted and played football for two seasons in 1972 and 1973. He held no part-time job for defendant while going to classes, studying and attending football practices and games. After his 1974 injury, he continued to receive his scholarship in full for the remainder of that school year. The following fall, however, that scholarship was reduced due to cutbacks in the university's scholarship program and due to team contribution. Plaintiff had to

* Circuit judge, sitting on the Court of Appeals by assignment.

leave the university because he could not financially afford to continue there."

It is undisputed that plaintiff was injured and that his injury was disabling, in that he was thereafter no longer able to play football. The parties stipulated that, if plaintiff were entitled to compensation, it would be limited to four semesters, the remainder of his college tenure at the time of the injury. In a decision issued April 17, 1979, the hearing referee denied compensation, finding that plaintiff "was not an employee of defendant" but rather "a scholarship-student athlete". On November 4, 1981, the WCAB affirmed based on its application of the "economic reality" test for determining the existence of an employer-employee relationship, *Askew v Macomber,* 398 Mich 212; 247 NW2d 288 (1976); *McKissic v Bodine,* 42 Mich App 203; 201 NW2d 333 (1972), *lv den* 388 Mich 780 (1972). The WCAB found no employment relationship between the parties.

The question before this Court is whether plaintiff, a student athlete, was an "employee" within the meaning of the Worker's Disability Compensation Act, which defines "employee" as follows:

"(1) As used in this act, 'employee' means: * * *
"(b) Every person in the service of another, under any contract of hire, express or implied * * *." MCL 418.161(1)(b); MSA 17.237(161)(1)(b).

The case requires application of the "economic reality" test for determining the existence of an employment relationship. *Askew v Macomber, supra. Askew* set forth certain factors which this Court must consider in determining whether there existed an "expressed or implied contract for hire" within the meaning of the foregoing provision.

These factors include: (1) the proposed employer's right to control or dictate the activities of the proposed employee; (2) the proposed employer's right to discipline or fire the proposed employee; (3) the payment of "wages" and, particularly, the extent to which the proposed employee is dependent upon the payment of wages or other benefits for his daily living expenses; and (4) whether the task performed by the proposed employee was "an integral part" of the proposed employer's business. See *Askew, supra,* pp 217-218. None of the foregoing factors is by itself dispositive. Each factor must be considered in turn, and all of them then taken into account in determining the existence of an employment relationship.

Concerning the first two *Askew* factors, *i.e.,* the employer's right to control the activities of the employee and to discipline the employee for unsatisfactory performance, the WCAB observed:

"Although defendant did direct plaintiff in the performance of his football activities and had the right to discipline or suspend him from the team, it could not then revoke his scholarship. Per testimony provided by both plaintiff and defendant's athletic director, even had plaintiff been removed from the team early on in the school year, his scholarship would continue until the end of that school year."

In reaching the conclusion that defendant's right to "discipline" plaintiff was limited, the WCAB properly noted evidence in the record which reveals that, even if defendant decided to remove plaintiff from the football team during a particular academic year, defendant could not revoke plaintiff's scholarship aid for that year. Instead, each time a scholarship was granted, it was effective for

an entire academic year, regardless of plaintiff's performance during the football season.

As to the limits on defendant's "right to control" plaintiff's activities, plaintiff suggests that defendant had a great deal of control over plaintiff's activities as a football player. It is observed, however, that such control applied to the sports activity whether or not an athlete had the benefit of a scholarship. Plaintiff's scholarship did not subject him to any extraordinary degree of control over his academic activities. The degree of defendant's control over this aspect of plaintiff's activities was no greater than that over any other student. Moreover, the record suggests that the parties contemplated a primary role for plaintiff's academic activities and only a secondary role for plaintiff's activites as a football player. Plaintiff recognized that "you are a student first, athlete second".

We agree with plaintiff that, under the third *Askew* factor, the scholarship constituted "wages" within the meaning of *Morgan v Win Schuler's Restaurant,* 64 Mich App 37; 234 NW2d 885 (1975), defining wages as items of compensation which are measurable in money or which confer an economic gain upon the employee. In return for his services as a football player, plaintiff received certain items of compensation which are measurable in money, including room and board, tuition and books. Plaintiff was in fact dependent on the payment of these benefits for his living expenses. See *McKissic v Bodine, supra.* Plaintiff testified directly that he could not have met all of his expenses without scholarship aid. When his scholarship was not renewed, plaintiff pursued his education elsewhere. The "payment of wages" factor weighs in favor of the finding of an employment relationship.

We finally consider the fourth factor of the

"economic reality test", namely, whether the task performed by the proposed employee is an integral part of the proposed employer's business. In its opinion, the WCAB emphasized its factual finding that the primary function of the defendant university was to provide academic education rather than conduct a football program:

"We do not find that any express or implied contract existed between plaintiff and defendant university so as to bring plaintiff's claim within the act. Per plaintiff's testimony, his purpose at the university was to further his education. In order to be able to financially accomplish this, he played football under defendant's athletic program. He testified that he had never entertained the hope of becoming a professional athlete. It was understood that, in order to have his scholarship renewed each year, plaintiff had to attend practices and games and otherwise fulfill the requirements of a university football player. The record just does not support the inference that plaintiff considered himself an 'employee' for defendant university.

\* \* \*

"Neither can we find that the 'work performed' (playing football), was an *integral* part of defendant's 'business' (education). Defendant, per testimony provided by Mr. Hoy, also offered scholarships to other students for participation in the band and debating team. Not all of the players on defendant's football team received a full scholarship such as plaintiff had." (Emphasis added.)

The term "integral" suggests that the task performed by the employee is one upon which the proposed employer depends in order to successfully carry out its operations. Plaintiff misplaces his reliance on *Moore v Fleischman Yeast Co,* 268 Mich 668; 256 NW 589 (1934) (janitor employee of sales office); *Glick v H A Montgomery Co,* 22 Mich App 678; 177 NW2d 724 (1970), *lv den* 383 Mich

788 (1970) (part-time electrician employee of chemical manufacturer); *Rys v ASD Parishes Credit Union,* 1973 WCABO 3091 (mason employee of credit union). Each of these cases is distinguishable from this case because each employee in question performed a function essential to the operations of the employer. The mason, the janitor or the electrician who builds, cleans, or maintains an employer's factory or office performs a function essential to the smooth and efficient operation of that employer's business. In this case, however, plaintiff's football playing was not essential to the business of the defendant university, which plaintiff himself recognizes "as education and research". The record supports the conclusion that defendant's academic program could operate effectively even in the absence of the intercollegiate football program. Defendant aptly notes that "the football season lasts for only a small portion of the academic year", and contrasts this with the fact that "the greater part of the school year is devoted exclusively to obtaining a regular college education".

In summary, the first and second factors of the "economic reality" test demonstrate that defendant had at least some right to control the activities of plaintiff and to discipline plaintiff for nonperformance, but these rights were substantially limited. The third factor, *i.e.,* the "payment of wages", favors the finding of an employment relationship. The fourth factor, concerning whether the employee's duties were integral to the employer's business, however, weighs heavily against the finding of an employment relationship.

The application of the "economic reality test", and the determination of the existence of a "contract for hire", within the meaning of MCL

418.161(1)(b); MSA 17.237(161)(1)(b) is a question of fact rather than one of law.

"The existence of an implied contract [of hire], of necessity turning on inferences drawn from given circumstances, usually involves a question of fact, unless no essential facts are in dispute. See 100 CJS, Workmen's Compensation, § 611. The question of an employee-employer relationship presents an issue of fact." *Erickson v Goodell Oil Co, Inc,* 384 Mich 207, 212; 180 NW2d 798 (1970).

The WCAB's findings of fact are conclusive absent a showing of fraud, Const 1963, art 6, § 28, if they are supported by any evidence in the record.

Plaintiff points to an out-of-state case, *Van Horn v Industrial Accident Comm,* 219 Cal App 2d 457; 33 Cal Rptr 169 (1963), for the proposition that a college football player can be the college's "employee" for workers' compensation purposes. In that case, California's equivalent of the WCAB found that the widow of a college football player killed in an airplane crash following a football game was entitled to compensation under that state's workers' compensation statutes. The WCAB refused to follow *Van Horn,* observing:

"The arrangement between plaintiff and defendant in the case before us, however, did not have the 'earmarks of a commercial relationship.' Defendant is not a commercial venture benefiting financially from its football team anymore than it has a pecuniary interest in the accomplishments of its other scholarship program recipients. In briefing, plaintiff points us to the 'landmark case' of *Van Horn v Industrial Accident Comm,* 219 Cal App 2d 457; 33 Cal Rptr 169 (1963). There, a student-athlete was killed in an airplane crash while returning from a football game in a plane provided by the school. The higher court held that his widow's death claim was compensable under the California Act. We direct plain-

tiff's attention, however, to *State Compensation Ins Fund v Industrial Comm,* 135 Colo 570; 314 P2d 288 (1957). There, deciding a case with facts very similar to the one before us, the court made the following statement when denying benefits:

" 'It is significant that the college did not receive a direct benefit from the activities, since the college was not in the football business and received no benefits from this field of recreation. In fact, the state conducted institution, supported by taxpayers, could not as a matter of business enter into the maintenance of a football team for the purpose of making a profit directly or indirectly out of the taxpayers' money.' "

It does not appear that it was necessary for the WCAB to rely on *State Compensation Ins Fund* in order to avoid the impact of *Van Horn. Van Horn* is distinguishable from the matter before us. The statute governing the finding of an employment relationship differed from the comparable Michigan statute. The California statute shifts the burden of proof to the proposed employer to disprove an employer-employee relationship. No comparable presumption of employment governs the inquiry in our case. Further, there is a factual distinction between *Van Horn* and the circumstances here. In *Van Horn,* the plaintiff football player had been provided with a job at the university's athletic department "for which he was paid by the hour". *Van Horn, supra,* p 462. Moreover, the plaintiff football player in *Van Horn* was paid a fixed fee by the month. Contrast the present case where plaintiff did not have any part-time job with defendant's athletic department and was given neither an hourly wage nor a monthly fixed fee but was instead provided with a scholarship for the school year.

Recently, an Indiana appellate court issued a decision on the subject of a scholarship football

player's eligibility for workers' compensation benefits. *Rensing v Indiana State University Bd of Trustees,* 437 NE2d 78 (Ind App, 1982). In *Rensing,* the Indiana Court of Appeals found that a college scholarship football player who had been rendered a quadriplegic during the course of a spring football practice was an "employee" of the university and, therefore, entitled to benefits. The Court of Appeals decision was reversed by the Indiana Supreme Court in *Rensing v Indiana State University Bd of Trustees,* 444 NE2d 1170 (Ind, 1983). In a well-reasoned opinion, the Supreme Court concluded that an "athlete receiving financial aid is still first and foremost a student". The court specifically agreed with the dissenting conclusion of Judge Young of the Indiana Court of Appeals:

" 'Furthermore, I do not believe that Rensing was "in the service of" the Trustees. Rensing's participation in football may well have benefited the university in a very general way. That does not mean that Rensing was in the service of the Trustees. If a student wins a Rhodes scholarship or if the debate team wins a national award that undoubtedly benefits the school, but does not mean that the student and the team are in the service of the school. Rensing performed no duties that would place him in the service of the university.' *Rensing v Indiana State University, supra,* p 90." *Rensing, supra,* p 1174.

Upon reviewing the record and the relevant law, we conclude that the WCAB did not err in finding that our plaintiff was not an "employee" of defendant within the meaning of the act.

Affirmed.