NEZDROPA v WAYNE COUNTY

BUSH v CITY OF DETROIT

Docket Nos. 85065, 85066, 87823. Submitted March 4, 1986, at Detroit. Decided June 16, 1986. Leave to appeal applied for.

Francis A. Nezdropa filed a petition for hearing with the Bureau of Workers' Disability Compensation on or about November 11, 1977, claiming that his position as Director of Case Work Services for the Wayne County Probate Court—Juvenile Division had aggravated, accelerated, and combined with his existing internal weaknesses and diseases to produce a disablement from occupational disease in January of 1976. A hearing referee found that Nezdropa was totally and permanently disabled by reason of the loss of the industrial use of both legs as of January 15, 1976; that the State of Michigan was his employer and that it was responsible for payment of weekly benefits and medical and hospital benefits ordered, paid or reimbursed; and that Wayne County was not liable to Nezdropa and ordered an appropriate attorney fee be paid to Nezdropa's attorney pursuant to the administrative rules of the Bureau of Workers' Disability Compensation. The Workers' Compensation Appeal Board affirmed the award with modifications, holding that, while Nezdropa did not have the reasonable use of his legs in industry, he was not entitled to compensation for total and permanent disability based on the loss of the industrial use of his legs; that he was an employee of the County of Wayne and that his employment aggravated his preexisting Crohn's disease from a dormant stage to a stage of devastating disability; and that the work-related disability precipitated a disabling depression and required Wayne County to pay his attorney an amount equal to thirty percent of the amount reimbursed to

REFERENCES

Am Jur 2d, Administrative Law §§ 422, 452, 492, 653, 654, 662, 663.

Am Jur 2d, Interest and Usury § 60.

Am Jur 2d, Workmen's Compensation §§ 240-243, 289-294, 333, 334, 339, 350, 351, 408, 410, 528, 537, 552, 579, 558, 616, 617, 630, 631, 644, 646, 658.

See the annotations in the ALR3d/4th Quick Index under Workers' Compensation.

Blue Cross/Blue Shield to cover advance payments it made to Nezdropa. Wayne County sought leave to appeal to the Court of Appeals. The Court of Appeals denied Nezdropa's motion to dismiss the application for leave to appeal and vacated the order of the WCAB that thirty percent of the medical reimbursement to Blue Cross/Blue Shield be paid to Nezdropa's attorney and at the same time denied his claim for an attorney fee based on said reimbursement. In all other respects leave to appeal was denied. Both parties then sought leave to appeal to the Supreme Court, which, in lieu of granting leave to appeal, remanded the matter to the Court of Appeals for consideration as on leave granted. 422 Mich 895 (1985).

In an unrelated matter, on May 26, 1982, the Workers' Compensation Appeal Board ordered the Common Pleas Court of Detroit to pay compensation to Mary Bush, the widow of Earl Bush, deceased. Bush's petition contended that Earl Bush suffered a heart attack and cerebral vascular accident brought on by his duties as a bailiff or process server for the Court of Common Pleas. When payment was not forthcoming, Bush brought an action in Wayne Circuit Court, which granted Wayne County's motion for summary judgment and denied Bush's petition for entry of judgment in the action. The Bureau of Workers' Disability Compensation then held a Rule V hearing to determine if there had been a lack of compliance with the final order of the WCAB. The bureau concluded that the WCAB's order was ambiguous and that an appellate court would have to resolve the question of which governmental entity, the City of Detroit, Wayne County, or the State of Michigan, was liable for the benefits which defendant Common Pleas Court was ordered to pay. On October 11, 1983, the Court of Appeals held that it was for the bureau to determine which of the defendants was responsible for paying the benefit awarded. 129 Mich App 658 (1983). On August 30, 1985, the WCAB ordered Wayne County to pay all benefits due and owing pursuant to the WCAB's May 26, 1982, order because, for the purposes of this case, Wayne County and the Common Pleas Court were one and the same. No penalty for late payment of benefits was imposed against Wayne County by the WCAB. Wayne County appealed by leave granted.

The three appeals arising out of these two matters have been consolidated. *Held:*

1. The WCAB did not err in determining that Nezdropa was disabled due to the aggravation of his Crohn's disease by his employment. The determination was amply supported by the evidence produced.

2. The WCAB correctly determined that Nezdropa was not

entitled to total and permanent disability benefits for the loss of the industrial use of both legs.

3. The WCAB correctly determined that Nezdropa was an employee of Wayne County for purposes of the Workers' Disability Compensation Act.

4. Neither Blue Cross nor Wayne County is required to pay Nezdropa's attorney thirty percent of the amount reimbursable to Blue Cross by Wayne County.

5. Under the economic realities test, Earl Bush was an employee of Wayne County, not of the State of Michigan. The WCAB did not err in ordering that Wayne County be responsible for paying benefits to Mary Bush.

6. The WCAB did not err in finding that Mary Bush was not entitled to a $1500 penalty for late payment of benefits by Wayne County. No penalty is assessed where there is an ongoing dispute as to entitlement to benefits.

7. Ten percent interest is to be paid on any overdue payments of benefits to Mary Bush.

Remanded for further proceedings.

1. Workers' Compensation — Appeal — Findings of Fact.
   Findings of fact made by the Workers' Compensation Appeal Board are conclusive absent a showing of fraud and may not be set aside if they are supported by record evidence.

2. Workers' Compensation — Appeal.
   Findings of fact by the Workers' Compensation Appeal Board are subject to limited judicial review, but where the board misconstrues the law the Court of Appeals is free to overturn the board's interpretation.

3. Workers' Compensation — Benefits.
   Workers' compensation benefits are payable where work has accelerated or aggravated a worker's illness, disease, or deterioration and thus contributed to it, or the work, coupled with the illness, disease, or deterioration, causes the illness in fact.

4. Workers' Compensation — Work-Related Injuries — Findings of Fact — Heart Attack — Appeal.
   Findings of fact by the Workers' Compensation Appeal Board that there was a causal nexus between a plaintiff's job and his illness or injury will not be disturbed on appeal where those findings are supported by competent evidence and the board applied the correct legal standard.

5. Workers' Compensation — Witnesses — Credibility.
   The credibility of testimony of medical and lay witnesses support-

ing a workers' compensation claim is for the determination of the Workers' Compensation Appeal Board.

6. WORKERS' COMPENSATION — APPEAL — CAUSATION.

Causation in a workers' compensation case is a factual question beyond the scope of review of appellate courts.

7. WORKERS' COMPENSATION — DISABILITY — QUESTIONS OF FACT.

The question of whether an employee is disabled and entitled to workers' compensation benefits is a question of fact.

8. WORKERS' COMPENSATION — INDUSTRIAL USE OF LEGS.

There is permanent and total lack of industrial use of both legs where (1) an employment-related injury in one or both legs causes pain or other condition that prevents use of both legs in industry or (2) the use of one or both legs, whether or not injured, triggers an employment-related injury or malady in any part of the body, including one or both legs, that causes pain or other condition that prevents use of both legs in industry.

9. WORKERS' COMPENSATION — INDUSTRIAL USE OF LEGS — QUESTIONS OF FACT.

The question of whether an employee has lost the industrial use of his legs for purposes of the Workers' Disability Compensation Act is a question of fact to be determined by the Workers' Compensation Appeal Board.

10. WORKERS' COMPENSATION — INDUSTRIAL USE OF LEGS — GENERALLY DEBILITATING DISEASES.

The rule that there is permanent and total lack of industrial use of both legs where (1) an employment-related injury in one or both legs causes pain or other condition that prevents use of both legs in industry or (2) the use of one or both legs, whether or not injured, triggers an employment-related injury or malady in any part of the body, including one or both legs, that causes pain or other condition that prevents use of both legs in industry does not apply to cases in which the loss of the industrial use of the legs is caused by a generally debilitating disease.

11. WORKERS' COMPENSATION — ECONOMIC REALITIES TEST — EMPLOYER-EMPLOYEE RELATIONSHIPS — ACTUAL EMPLOYER.

The economic realities test is used to determine if an employer-employee relationship exists for purposes of the Workers' Disability Compensation Act; it is also appropriate to use the economic realities test to determine which of two entitites was

a claimant's actual employer for purposes of the act (MCL 418.101 *et seq.;* MSA 17.237[101] *et seq.).*

12. WORKERS' COMPENSATION — EMPLOYMENT — ECONOMIC REALITIES TEST.

The relevant factors to be considered under the economic realities test are: (1) control of a worker's duties; (2) payment of wages; (3) the right to hire, fire, and discipline; and (4) the performance of the duties as an integral part of the employer's business toward the accomplishment of a common goal.

13. WORKERS' COMPENSATION — ECONOMIC REALITIES TEST.

The economic realities test looks to the employment situation in relation to the statutory scheme of workers' compensation law, with the goal of preserving and securing the rights and privileges of all parties; no one factor is controlling.

14. WORKERS' COMPENSATION — ECONOMIC REALITIES TEST.

Application of the economic realities test in a workers' compensation case is a matter of law.

15. ATTORNEY AND CLIENT — ATTORNEY FEES.

Where one of several persons, all of whom are equally interested in the results of a lawsuit, employs an attorney to conduct the case for him and the benefit of the attorney's services from the nature of the case extends to all interested parties, the other parties do not, merely by accepting the benefits of the attorney's services without objection, become liable for the attorney's fees.

16. WORKERS' COMPENSATION — GROUP HOSPITALIZATION INSURANCE — ASSIGNMENTS — ATTORNEY FEES.

The Workers' Disability Compensation Act expressly authorizes the assessment of a pro-rata share of a claimant's attorney's fees against an insurance company which seeks to enforce an assignment given it by the claimant-employee in exchange for an advance payment under a group hospitalization insurance policy; a prorata share of the attorney's fees may not be assessed against an insurer which does not seek such an assignment but is forced to accept the assignment only at the behest of a workers' compensation hearing referee (MCL 418.821; MSA 27.237[821]).

17. WORKERS' COMPENSATION — ADMINISTRATIVE RULES — ATTORNEY FEES.

A rule of the Bureau of Workers' Disability Compensation, prior to the amendment of the rule in 1979, provided that an

attorney could not recover a percentage fee for any portion of a workers' compensation recovery which represented accrued medical expenses; thus, an employer of an employee found to be eligible for workers' compensation benefits due to an injury which occurred prior to the 1979 amendment is not liable to the employee's attorney for any portion of the workers' compensation recovery which represents accrued medical expenses (1972 AACS, R 408.44).

18. WORKERS' COMPENSATION — DELAY IN PAYMENT — PENALTIES.

A workers' compensation award is "in dispute" while a review or appeal is pending and during the time periods for filing a claim for review or of appeal for purposes of the section of the Workers' Disability Compensation Act which provides for a penalty for late payment of benefits; the existence of a dispute is a finding of fact which will not be overturned by the Court of Appeals if it is supported by some competent evidence (MCL 418.801[2]; MSA 17.237[801][2]).

19. WORKERS' COMPENSATION — INTEREST ON AWARDS.

The date on which a past due workers' compensation payment is made determines the rate of interest to be applied to the amount of the payment; where payment is made after July 30, 1985, interest on the amount due is computed at ten percent per annum from the date the payment was due, regardless of the date of the award and the date the payment was due (1985 PA 103; MCL 418.801[5]; MSA 17.237[801][5]).

*John L. Salter,* and *William G. Wolfram,* for Francis A. Nezdropa.

*Conklin, Loesch & Caravas* (by *Robert L. Loesch* and *Michael C. Olson*), for Mary Bush.

*John D. O'Hair,* Corporation Counsel, and *Mary S. Rowan,* Assistant Corporation Counsel, for Wayne County in Docket Numbers 85065 and 85066.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Joseph M. Binno,* Assistant Attorney General, for State of Michigan-Michigan Judiciary, Michigan State Accident Fund, and Second Injury Fund in Docket Number

85066 and for State of Michigan-Michigan Judiciary in Docket Number 87823.

*Conklin, Benham, McLeod, Ducey & Ottaway, P.C.* (by *Martin L. Critchell*), for Michigan State Accident Fund in Docket Number 85065.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Caleb B. Martin, Jr.,* Assistant Attorney General, for Second Injury Fund in Docket Number 85065.

*John D. O'Hair,* Corporation Counsel, and *Douglas B. Dimitry,* Assistant Corporation Counsel, for Wayne County in Docket Number 87823.

Before: J. H. GILLIS, P.J., and GRIBBS and N. J. LAMBROS,* JJ.

N. J. LAMBROS, J. Three cases have been consolidated on appeal in this matter. Case No. 85065 was remanded to this Court for consideration as on leave granted by the Supreme Court and deals with plaintiff-appellant Francis Nezdropa's appeal from a Workers' Compensation Appeal Board decision that he was not entitled to total and permanent disability benefits for the loss of industrial use of both legs and that his attorney was entitled to an attorney fee on amounts reimbursable by Wayne County to Blue Cross/Blue Shield, to be paid by either Blue Cross/Blue Shield or Wayne County. Case No. 85066 was also remanded to this Court by the Supreme Court. It concerns defendant-appellant Wayne County's appeal from the same WCAB opinion which determined that, for purposes of the Workers' Disability Compensation Act, Wayne County was plaintiff's employer and

_____
* Circuit judge, sitting on the Court of Appeals by assignment.

that plaintiff was disabled. Case No. 87823 is unrelated to the first two and concerns Wayne County's appeal by leave granted of an August 30, 1985, opinion and order of the WCAB which determined that Wayne County was plaintiff Earl Bush's employer. Plaintiff Mary Bush filed a cross-appeal contesting the findings that she was not entitled to a penalty for late payment of benefits and that she was only entitled to ten percent interest on overdue awards.

## 85065 and 85066

The facts of these cases are not in dispute. Plaintiff Nezdropa first experienced gastrointestinal problems during the early 1950's while serving in the U.S. Army. After he left the service in 1954, plaintiff began work on a bachelor's degree at the University of Detroit and worked for the Detroit Police Department on a probationary basis. Plaintiff continued to experience gastrointestinal problems, and, as a result, he had surgery to remove his gall bladder in 1955. Plaintiff terminated his employment with the police department. After he received his degree, he began to work for the County of Wayne as a probation worker intern while pursuing graduate studies in social work.

When he was hired in September of 1958, plaintiff was qualified for temporary light duty based upon a letter from the Veteran's Administration relating to plaintiff's gastrointestinal problems. At that time, plaintiff was taking medication and characterized his health as fairly good. Plaintiff completed his master's degree in 1959. He passed Civil Service and physical examinations administered by the county and began to work for the County of Wayne full time as a probation officer. In 1965, plaintiff was promoted to the newly cre-

ated position of administrative assistant to Judge James Lincoln of the probate court.

In 1970, Judge Lincoln appointed plaintiff Nezdropa to the position of Director of Case Work Services for the Wayne County Juvenile Court. In this capacity, plaintiff supervised the staff of 150 and worked about sixty hours per week. In 1971, Judge Lincoln discharged the Director of the Wayne County Clinic for Child Studies and added the responsibilities of that position to plaintiff's duties as Director of Case Work.

On or about November 11, 1977, plaintiff filed a petition for hearing with the Bureau of Workers' Disability Compensation, claiming that his position as Director of Case Work Services for the Wayne County Probate Court—Juvenile Division had aggravated, accelerated, and combined with his internal weaknesses and diseases to produce a disablement from occupational disease in January of 1976. On June 4, 1980, hearing referee James V. Lemhagen issued a memorandum opinion finding that plaintiff was totally and permanently disabled by reason of loss of the industrial use of both legs as of January 15, 1976, that the State of Michigan was plaintiff's employer and that it was responsible for payment of weekly benefits and medical/hospital benefits ordered, paid or reimbursed, and that Wayne County was not liable to plaintiff, and ordered that an appropriate attorney fee be paid to plaintiff's attorney pursuant to Rule 14 of the Bureau of Workers' Disability Compensation, 1972 AACS, R 408.44.

The WCAB affirmed the award with modifications, holding that, while plaintiff did not have the reasonable use of his legs in industry, he was not entitled to compensation for total and permanent disability based on the loss of the industrial use of his legs, that plaintiff was an employee of the

County of Wayne and that plaintiff's employment aggravated his preexisting Crohn's disease from a dormant stage to a stage of devastating disability, and that the work-related disability precipitated a disabling depression, and required defendant to pay plaintiff's attorney an amount equal to thirty percent of the amount paid to Blue Cross/Blue Shield by defendant for reimbursement of advance payments made by Blue Cross/ Blue Shield to plaintiff.

Findings of fact made by the WCAB are conclusive absent a showing of fraud and may not be set aside if they are supported by record evidence. *Spencer v Clark Twp,* 142 Mich App 63, 66; 368 NW2d 897 (1985); MCL 418.861; MSA 17.237(861). Although findings of fact by the WCAB are subject to limited judicial review, where the board misconstrues the law the appellate court is free to overturn its interpretation. *Tew v Hillsdale Tool & Mfg Co,* 142 Mich App 29, 32; 369 NW2d 254 (1985).

Defendant argues that the WCAB erred in determining plaintiff Nezdropa to be disabled due to the aggravation of his Crohn's disease by his employment. We disagree. Workers' compensation benefits are payable where work has accelerated or aggravated a worker's illness, disease, or deterioration and thus contributed to it, or the work, coupled with the illness, disease, or deterioration, causes the illness in fact. *Kostamo v Marquette Iron Mining Co,* 405 Mich 105, 116; 274 NW2d 411 (1979). Findings of fact by the WCAB that there was a causal nexus between plaintiff's job and his illness or injury will not be disturbed on appeal where the findings are supported by competent evidence and the board applied the correct legal standard. *Kain v Michigan,* 109 Mich App 290, 297-298; 311 NW2d 351 (1981), lv den 413 Mich

910 (1982). The credibility of medical and lay witnesses is for the determination of the WCAB, *Sanford v Ryerson & Haynes, Inc,* 396 Mich 630, 635; 242 NW2d 393 (1976), reh den 397 Mich 956 (1976). Causation is a factual question beyond the scope of review of appellate courts. *Scroggins v Corning Glass Co,* 382 Mich 628, 630; 172 NW2d 367 (1969). The question of whether plaintiff is disabled is also a question of fact. *Dressler v Grand Rapids Die Casting Corp,* 402 Mich 243, 251; 262 NW2d 629 (1978).

The WCAB's determination was amply supported by the evidence produced. Plaintiff Nezdropa testified that he believed that his employment contributed adversely to his physical and mental disability. Dr. Lawrence H. Warbasse testified that emotional stress may exacerbate Crohn's disease. He noted that while there is a controversy as to whether Crohn's disease is made worse by stress, there is no doubt that the *symptoms* of the disease are made worse by it. In his opinion, plaintiff was disabled by the symptoms of the disease. Dr. Joel S. Dreyer testified that plaintiff's work caused depression, anxiety, and a diminished ability to function. Dr. William U. Reid, who examined plaintiff at the county's request, testified that plaintiff's employment had little effect on the course of the disease, although it could have affected his symptoms. He admitted that, occasionally, the symptoms of Crohn's disease can be disabling and maintained that stress could have contributed to the severity of plaintiff's symptoms, but not to the underlying pathology. Dr. Aubrey Goldman testified that stress can exacerbate the symptoms of Crohn's disease, although it is doubtful that the disease process itself is affected. Dr. Goldman noted that the symptoms of the disease could prevent an individual from working or even kill

him. Dr. Erwin F. Finklestein testified that plaintiff Nezdropa had a psychiatric disability, but that it was not related to his work. He noted that he had never seen an individual with Crohn's disease who did not have episodic depression. Dr. Finklestein indicated that work could have exacerbated plaintiff's depression.

On these facts, it is clear that the WCAB's determination on this issue should not be disturbed.

In a related issue, plaintiff argues that the WCAB erred when it determined that he was not entitled to total and permanent disability benefits for the loss of industrial use of both legs. Once again we agree with the WCAB's findings.

MCL 418.361(3)(g); MSA 17.237(361)(3)(g)[1] provides:

Total and permanent disability, compensation for which is provided in section 351 means:

* * *

(g) Permanent and total loss of industrial use of both legs or both hands or both arms or 1 leg and 1 arm; for the purpose of this subdivision such permanency shall be determined not less than 30 days before the expiration of 500 weeks from the date of injury.

There is permanent and total lack of industrial use of both legs where (1) an employment-related injury in one or both legs causes pain or other condition that prevents use of both legs in industry or (2) the use of one or both legs, whether or

[1] We note that the parties are referring to MCL 418.361(2)(g); MSA 17.237(361)(2)(g). The 1980 amendment to this section redesignated parts of subsection 2 and 3 as subsections 3 and 4. See the historical note to MCL 418.361 in the Michigan Compiled Laws Annotated volume. Presumably the earlier numbering of the section was in effect when this plaintiff was injured. See *Ayres v American Chain & Cable Co,* 56 Mich App 111; 223 NW2d 641 (1974), lv den 393 Mich 784 (1984) (date of injury controls compensation rights).

not injured, triggers an employment-related injury or malady in any part of the body, including one or both legs, that causes pain or other condition that prevents use of both legs in industry. *Burke v Ontonagon Co Road Comm,* 391 Mich 103, 114; 214 NW2d 797 (1974). Loss of industrial use is a question of fact to be determined by the WCAB. *Villanueva v General Motors Corp,* 116 Mich App 436, 440; 323 NW2d 431 (1982), lv den 417 Mich 937 (1983).

This case is controlled by *Triplett v Chrysler Corp,* 394 Mich 518; 232 NW2d 168 (1975), reh den 395 Mich 911 (1975), where the Supreme Court held that the *Burke* rule was not intended to include cases in which the loss of industrial use of the legs is caused by a generally debilitating disease. 394 Mich 520.

In the present case, the WCAB concluded:

> Plaintiff's loss of industrial use of his legs is the result of a myopathy which, presumably nutritional in nature, is most likely related to plaintiff's Crohn's disease and the accompanying malabsorption syndrome and results in the generalized muscle weakness which plaintiff experiences. Per the testimony of Dr. Warbasse, while plaintiff's legs are somewhat more affected than other muscle groups, the myopathy is nonetheless generalized in nature. Plaintiff's loss of use of his legs is therefore the result of his Crohn-related myopathy and, to a substantial degree, affects all muscle functions throughout his body in a similar manner. Plaintiff is thus not entitled to statutory benefits for industrial loss of use of his legs.

We find that the WCAB correctly applied the *Triplett* test and that plaintiff was not entitled to compensation for the loss of industrial use of his legs.

Having determined that the WCAB was correct in

deciding the compensation to which plaintiff was entitled, we turn to the question of determining which entity was responsible for paying that compensation. Wayne County argues that the State of Michigan should be responsible; the State of Michigan argues that Wayne County should be responsible. Plaintiff, as is to be expected, does not care who pays as long as he collects his compensation.

A similar question was addressed in *Kain v Michigan,* 109 Mich App 290; 311 NW2d 351 (1981), lv den 413 Mich 910 (1982), where this Court was asked to determine whether the City of Grand Rapids or the State of Michigan was liable for workers' disability compensation benefits due to the dependents of a deceased assignment clerk of the 61st District Court. This Court held that the 61st Judicial District is an administrative unit of the state's one court of justice. However, the judicial district was created by statute, MCL 600.8101(1); MSA 27A.8101(1), which then created a district control unit and assigned it the cost of operating the court. Thus, this Court concluded that there was clear legislative intent to make the court the employer, which mandated that the local control unit provide workers' compensation disability coverage.

We have decided to approach the issue in a different fashion. Although we reach the same result we would have had we followed *Kain, supra,* we feel that a different test should be used.

Under Michigan's Worker's Disability Compensation Act, MCL 418.101 *et seq.;* MSA 17.237(101) *et seq.,* the economic realities test is used to determine if an employer-employee relationship exists. *Farrell v Dearborn Mfg Co,* 416 Mich 267, 276; 330 NW2d 397 (1982). That test was first adopted by the Supreme Court in *Tata v Muskovitz,* 354 Mich 695; 94 NW2d 71 (1959). While earlier applications

of the test dealt with the distinction between an independent contractor and an employee or labor-broker situations, it is also appropriate to use the economic realities test to determine *which* of two entities was a claimant's actual employer for purposes of the Workers' Disability Compensation Act. *Wells v Firestone Tire & Rubber Co,* 421 Mich 641, 647; 364 NW2d 670 (1984).

The relevant factors to be considered under the economic realities test are: (1) control of a worker's duties; (2) payment of wages; (3) the right to hire, fire, and discipline; and (4) the performance of the duties as an integral part of the employer's business toward the accomplishment of a common goal. *Lambard v Saga Food Service, Inc,* 127 Mich App 262, 270; 338 NW2d 207 (1983), lv den 419 Mich 958 (1984); *Askew v Macomber,* 398 Mich 212, 217-218; 247 NW2d 288 (1976). The test looks to the employment situation in relation to the statutory scheme of workers' compensation law, with the goal of preserving and securing the rights and privileges of all parties. No one factor is controlling. *Farrell, supra,* p 276.

In this case, plaintiff Nezdropa testified that Judge James H. Lincoln appointed him to the position of Director of Case Work Services for the Wayne County Probate Court—Juvenile Division. In that capacity, he was the administrative head of the Social Services Division of the court and was responsible for seven or eight divisions. Wayne County paid his salary and his medical insurance. He had a contract with Wayne County, and if he had a grievance he would negotiate it with Wayne County. Plaintiff was on a pension provided by Wayne County and his desk and supplies were provided by Wayne County. Plaintiff prepared budgets which were sent to Wayne County.

William M. Lawrence, Jr., testified that he was employed by the Wayne County Juvenile Court as a court executive. According to Lawrence, the executive judge appoints the Director of Case Work Services of the Juvenile Court and he or she discharges individuals in that position. It would be fair to say that, as a matter of economic reality, the court system depended on Wayne County for all its funds.[2] Salaries of the juvenile court judges were paid by the county and supplemented by the state. Clearly, the wcab's findings were amply supported by the evidence produced.

We recognize that there is some conflict in this Court as to whether application of the economic realities test is a question of fact or a matter of law. We feel it is the latter. See *Askew, supra, Lambard, supra,* and *Stover v Midwest Tank & Fabrication Co, Inc,* 87 Mich App 452; 275 NW2d 15 (1978), lv den 406 Mich 926 (1979). To the extent that there are other cases which infer that application of the economic realities test is a question of fact, we decline to follow them. See *Coleman v Western Michigan University,* 125 Mich App 35; 336 NW2d 224 (1983), lv den 418 Mich 872 (1983); *Nichol v Billot,* 406 Mich 284; 279 NW2d 761 (1979).[3]

The last issue in these two appeals concerns plaintiff's attorney's fee. The wcab initially ordered Blue Cross/Blue Shield to pay plaintiff's

[2] The Legislature, in 1980 PA 438, provided for state assumption of court costs for Wayne Circuit, Detroit Recorder's, and the 36th District Courts. However, this plaintiff claims he became disabled in January, 1976, when the Wayne County courts were still locally funded.

[3] We have not discussed *Judges of the 74th Judicial Dist v Bay County,* 385 Mich 710; 190 NW2d 219 (1971), *Employees & Judges of the 2nd Judicial Dist Court v Hillsdale Co,* 423 Mich 705; 378 NW2d 744 (1985), and similar cases because we find them to be inapplicable. See 2C Larson, Workmen's Compensation Law, § 4342. These cases deal with the financing and power structure of the Michigan courts and do not address the Workers' Disability Compensation Act.

attorney an amount equal to thirty percent of the amount reimbursable to Blue Cross by Wayne County. This Court's June 22, 1983, order denying leave to appeal summarily reversed that award:

> It is ordered, pursuant to GCR 1963, 806.7 and 820.1(7), that the March 8, 1983 order of the Worker's Compensation Appeal Board in this cause, fixing and awarding attorney fees and ordering payment thereof by Blue Cross Blue Shield of Michigan, be, and the same is hereby reversed, *Boyce v Grand Rapids Paving Co,* 117 Mich App 546, 549-550 (1982); and,
>
> It is further ordered that this cause be, and the same is hereby remanded to the Worker's Compensation Appeal Board for further proceedings consistent with this order. If the pertinent events occurred subsequent to the 1979 amendment to Rule 14, 1972 AACS, [R] 408.44, the employer may be liable for payment of the attorney's fee. *Boyce, supra,* 117 Mich App at 551, n 1.

Upon remand, the wcab concluded that pertinent events occurred subsequent to the 1979 amendment to Rule 14 and ordered Wayne County to pay plaintiff's attorney an amount equal to thirty percent of the amount reimbursed to Blue Cross. On September 5, 1984, this Court vacated that portion of the wcab order directing Wayne County to pay plaintiff's attorney a fee on the amount reimbursable to Blue Cross. Because this case is before us on remand from the Supreme Court, we must now determine whether Blue Cross, Wayne County, or neither should be required to pay plaintiff's attorney thirty percent of the amount reimbursable to Blue Cross by Wayne County.

Wayne County and Blue Cross have an agreement that Blue Cross does not pursue litigation against the county in workers' compensation cases and the county reimburses Blue Cross for one

hundred percent of medical expenses in cases where the county has an open award or pays voluntarily. According to Blue Cross, this system saves time, effort, and administrative costs and Blue Cross does not have to gain the cooperation of a claimant's attorney. The reimbursed amount is credited to the group's utilization and the subscriber's history file.

This Court originally reversed the WCAB's award of attorney fees based on *Boyce v Grand Rapids Asphalt Paving Co,* 117 Mich App 546; 324 NW2d 28 (1982), lv den 417 Mich 1023 (1983). In *Boyce,* this Court held that a hospital, which did not employ or authorize employment of plaintiff's attorney, is not responsible for any portion of the attorney fees. *Id.,* 549-550. This Court noted:

> Where one of several persons, all of whom are equally interested in the results of a suit, employs an attorney to conduct the case for him and the benefit of the attorney's services from the nature of the case extends to all interested parties, the other parties do not, merely by accepting the benefits of the attorney's services without objection, become liable for the attorney's fees. [117 Mich App 549.]

We find *Boyce* to be controlling on this issue. The agreement between Blue Cross and Wayne County undoubtedly saves time and money which is reflected in the price of health insurance premiums the county pays to Blue Cross on behalf of its employees. In a society which is said to be overly litigious, we find this method of "alternative dispute resolution" to be a matter of sound public policy. The fact that the agreement is apparently not in writing matters not. Only a statute of frauds problem would require a writing and this

agreement does not violate the statute of frauds. See MCL 566.132; MSA 26.922.

Plaintiff contends that *Boyce, supra,* is inapplicable because his attorney seeks compensation pursuant to MCL 418.821; MSA 17.237(821) and not under any implied contract theory.[4] The statute expressly authorizes the assessment of a pro rata share of a claimant's attorney's fees against an insurance company which seeks to enforce an assignment given it by the claimant-employee in exchange for an advance payment under a group hospitalization insurance policy. See *Zeeland Community Hospital v VanderWal,* 134 Mich App 815, 824; 351 NW2d 853 (1984).

We find a flaw with plaintiff's argument. Blue Cross never sought to enforce an assignment. Blue Cross got a trust and assignment only at the behest of the hearing referee. We decline to order Blue Cross to enforce an agreement it did not want and to be represented by an attorney it did not hire and had no desire to be represented by.

We next turn to the issue of whether Wayne County should be liable for the fee. This issue was also addressed by this Court in *Boyce, supra,* when it discussed MCL 418.315; MSA 17.237(315). In pertinent part, it provides:

> The employer shall furnish, or cause to be furnished, to an employee who receives a personal injury arising out of and in the course of his employment, reasonable medical, surgical, and hospital services and medicines, or other attendance or treatment recognized by the laws of this state as legal, when they are needed. . . . If the employer fails, neglects or refuses so to do, the

---

[4] This statute was amended by 1978 PA 523, § 1 and 1982 PA 282, § 1. However, since neither amendment made a substantive change in the statute, it is unnecessary for us to determine if the statute or either of its amended versions governs.

employee shall be reimbursed for the reasonable expense paid by him, or payment may be made in behalf of the employee to persons to whom the unpaid expenses may be owing, by order of the hearing referee. The hearing referee may prorate attorney fees at the contingent fee rate paid by the employee . . . .

While the final sentence could be construed to require Wayne County to pay plaintiff's attorney fee, it must be interpreted in light of the administrative rules of the Bureau of Workers' Disability Compensation. Rule 14, which was in effect on the date of plaintiff's injury, contains the following subrule:

(2) In a case tried to completion with proofs closed or compensation voluntarily paid, an attorney shall first deduct the reasonable expenses from the accrued compensation which have been incurred by the plaintiff. The fee which the referee may approve shall not be more than 30% of the balance. [1972 AACS, R 408.44.]

Reasonable expenses, listed in subrule 5, include hospital and medical expenses. Thus, under the rule, "an attorney cannot recover a percentage fee for any portion of compensation recovery which represents accrued medical expenses." *Boyce, supra,* p 551.

As footnote 1, page 551 of *Boyce, supra,* points out, the rule was amended in 1979, deleting hospital and medical expenses from the list of reasonable expenses. This case was previously remanded to the WCAB for determination of whether the "pertinent events" occurred subsequent to the 1979 amendment, thus making Wayne County liable for payment of the attorney's fee. The WCAB determined that the assignment, plaintiff's attorney's efforts, and the hearings in this matter all

occurred after the 1979 amendment and ordered Wayne County to pay the attorney's fees. That directive was vacted by this Court on September 5, 1984.

According to our reading of *Boyce,* the pertinent event is the date of plaintiff's injury. Although footnote 1 in *Boyce* does mention the contingency fee contract between the plaintiff and the attorney, we find that the implicit holding of *Boyce* is that the date of the injury controls. In the present case, plaintiff Nezdropa alleges his injury occurred in January, 1976, long before the 1979 amendment of Rule 14. Thus, Wayne County is not liable to plaintiff's attorney for attorney fees on the amount reimbursable to Blue Cross.

*87823*

On May 26, 1982, the Workers' Compensation Appeal Board ordered the Common Pleas Court to pay compensation to Mary Bush (plaintiff), the widow of Earl Bush, deceased. Plaintiff's petition contended that Earl Bush suffered a heart attack and cerebral vascular accident brought on by his duties as a bailiff or process server for the Court of Common Pleas.

When payment was not forthcoming plaintiff brought an action in Wayne Circuit Court, which granted Wayne County's motion for summary judgment and denied plaintiff's petition for entry of judgment in the action. The Bureau of Workers' Disability Compensation then held a Rule V hearing to determine if there had been a lack of compliance with the final order of the WCAB. The bureau concluded that the WCAB's order was ambiguous and that an appellate court would have to resolve the question of which governmental entity was liable for the benefits which defendant Com-

mon Pleas Court was ordered to pay. On October 11, 1983, a panel of this Court held that it was for the bureau to determine which of the defendants was responsible for paying the benefits awarded. See *Bush v Detroit,* 129 Mich App 658, 662; 341 NW2d 859 (1983).

On August 30, 1985, the WCAB ordered Wayne County to pay all benefits due and owing pursuant to the WCAB's May 26, 1982, order, because, for the purposes of this case, Wayne County and the Common Pleas Court were one and the same. No penalty was imposed against Wayne County by the WCAB.

The first issue we address is whether the WCAB erred when it ordered Wayne County to pay benefits to plaintiff. Plaintiff argues that this Court is not called on to decide which entity was plaintiff's decedent's employer; rather, we are only being asked to determine what entity was responsible for paying the debt of the Common Pleas Court, which was found to be plaintiff's decedent's employer by the hearing referee. We disagree and find that the real issue, as in the *Nezdropa* case, is which entity —the city, the county, or the state—was the plaintiff's decedent's employer for purposes of the Workers' Disability Compensation Act. As we decided in the *Nezdropa* case, under Michigan's Workers' Disability Compensation Act, the economic realities test is used to determine if an employer-employee relationship exists.

Earl Bush, now deceased, was appointed as a bailiff with the Common Pleas Court in January of 1969. According to the chief deputy clerk of the Common Pleas Court, the bailiffs are not court employees and are paid service fees, which are set by statute, when and if they serve the papers in an action. Wayne County issued the checks paid to Earl Bush.

The offices and all office equipment and furniture of the bailiffs was furnished by Wayne County. The county furnished a secretary for the bailiffs and handled their pension plan. The county provided medical and life insurance and required and paid for a physical examination for all new hires of the court system. The Court of Common Pleas informally used the Wayne County Civil Service system.

A review of the above, when considering the relevant factors of the economic realities test as found in *Askew v Macomber, supra,* pp 217-218, leads us to the conclusion that for the purposes of the Workers' Disability Compensation Act, plaintiff's decedent was an employee of Wayne County. Thus, we affirm the WCAB order that Wayne County be responsible for paying benefits to plaintiff.

We next address whether the WCAB erred when it found that plaintiff was not entitled to a $1,500 penalty for late payment of benefits.

At the time of Earl Bush's injury, MCL 418.801(2); MSA 17.237(801)(2) provided:

> If weekly compensation benefits, accrued weekly benefits, medical bills, or travel allowance are not paid within 30 days after becoming due and payable in cases where there is no ongoing dispute, $50.00 per day shall be added and paid to the worker for each day over 30 days in which the compensation, medical bills, or travel allowance are not paid. Not more than $1,500.00 in total may be added pursuant to this subsection.

Two reasons were given by the WCAB for not ordering that Wayne County pay a penalty. The first is that the Common Pleas Court had ceased to

exist when the WCAB entered its order in 1982.[5] The failure of the board to specify which governmental entity was responsible for payment for workers' compensation purposes was sufficient to constitute an ongoing dispute within the meaning of the statute. Another member noted that since Wayne County had not previously been notified of its liability, it would be violative of due process to assess a penalty for late payment.

A workers' compensation award is "in dispute," for purposes of this section, while a review or appeal is pending and during the time periods for filing a claim for review or of appeal. *Warner v Collavino Bros,* 133 Mich App 230, 235; 347 NW2d 787 (1984), lv den 422 Mich 862 (1985). The existence of a dispute is a finding of fact which will not be overturned by this Court if it is supported by some competent evidence. *Id.,* 237.

Clearly, the WCAB's finding that there was a dispute in this case was correct. This Court's own earlier opinion in this case indicated that there was an existing controversy. We therefore affirm the WCAB's ruling on this issue.

In a related issue, plaintiff contends she should have been given twelve percent interest on overdue benefits. We disagree.

MCL 418.801(5); MSA 17.237(801)(5), as set forth in 1981 PA 194, provided:

> When weekly compensation is paid pursuant to an award of a hearing referee, the board, or a court, interest on the compensation shall be paid at the rate of 12% per annum from the date each payment was due, until paid.

In *Selk v Detroit Plastic Products (On Resubmis-*

---

[5] The Court of Common Pleas ceased to exist and was replaced by the 36th District Court on May 1, 1981, pursuant to 1980 PA 438.

*sion),* 419 Mich 32, 35; 348 NW2d 652 (1984), the Supreme Court held that when an employer *pays* compensation on or after January 1, 1982, pursuant to an award interest on the award shall be paid at twelve percent from the date each payment was due.

However, 1985 PA 103, accepted and filed July 30, 1985, and ordered to take immediate effect, amended MCL 418.801; MSA 17.237(801). The new version of subsection 6 of the statute now provides that interest on the compensation shall be paid at the rate of ten percent. The WCAB entered the order in this case on August 30, 1985. The analysis of *Selk, supra,* applies to the new statute as well. Since Wayne County will pay compensation after the effective date of the act, the ten percent rate of the new act is the correct rate of interest.

Remanded for proceedings consistent with this opinion.