## GLICK *v.* H. A. MONTGOMERY COMPANY

1. WORKMEN'S COMPENSATION — EMPLOYMENT — EVIDENCE — FED-ERAL TAX.

    Evidence showing that an employer did not comply with federal rules by deducting payroll taxes from the sums he paid his employee is not proof that the employee was an independent contractor and that no contract of hire existed between the parties.

2. WORKMEN'S COMPENSATION — EMPLOYMENT — INDEPENDENT CON-TRACTOR — TOOLS.

    A retired journeyman electrician's use of his own tools in part-time employment is not proof of his being an independent contractor, but nothing more than the use of personal tools that any skilled tradesman would have.

3. WORKMEN'S COMPENSATION — EMPLOYMENT — INDEPENDENT CON-TRACTOR.

    The relationship of a retired electrician to an employer is not that of an independent businessman when he performs a regular, recurring and substantial part of his employer's work in the form of maintenance and repair, and when the work is a relatively large item to him, whether or not he has a public business.

4. WORKMEN'S COMPENSATION—EMPLOYER—DEFINITION—STATUTES.

    The definition of an employer subject to the provisions of the workmen's compensation act is every person, firm and private corporation, including any public service corporation, who has any person in service under any contract of hire, express or implied, oral or written.

---

REFERENCES FOR POINTS IN HEADNOTES
[1–7]  58 Am Jur, Workmen's Compensation §§ 137, 138.
[5, 7]  58 Am Jur, Workmen's Compensation § 26 *et seq.*
[6]  58 Am Jur, Workmen's Compensation §§ 2, 9.

5. WORKMEN'S COMPENSATION—EMPLOYEE—DEFINITION—STATUTES.

The term employee as used in the workmen's compensation act shall be construed to mean every person in the service of another under any contract of hire, express or implied (MCLA § 411.7).

6. WORKMEN'S COMPENSATION—STATUTES—CONSTRUCTION—LEGISLATIVE PURPOSE.

Workmen's compensation acts were passed as remedial legislation to alleviate social and economic problems of workers.

7. WORKMEN'S COMPENSATION—STATUTES—CONSTRUCTION.

The ills sought to be cured by the passage of workmen's compensation acts demand that the acts be given a liberal interpretation.

Appeal from Workmen's Compensation Appeal Board. Submitted Division 1 February 9, 1970, at Detroit. (Docket No. 7,291.) Decided March 26, 1970. Leave to appeal denied June 9, 1970. 383 Mich 788.

Claim by David Glick against the H. A. Montgomery Company and Royal Indemnity Company for workmen's compensation benefits for injuries received in a fall from a ladder. Decision for plaintiff by hearing referee reversed by the Workmen's Compensation Appeal Board. Plaintiff appeals. Reversed.

*Kalem E. Garian,* for plaintiff.

*LeVasseur, Werner, Mitseff & Brown,* for defendants.

*Amicus Curiae:* Michigan State Building and Construction Trades Council, by *Rapaport, Siegrist & Sablich.*

Before: Quinn, P. J., and R. B. Burns and Fitzgerald, JJ.

R. B. Burns, J.  Plaintiff appeals a four to three decision of the workmen's compensation appeal board reversing a finding by the referee that plaintiff was an employee of defendant H. A. Montgomery Company at the time he was injured in a fall from a ladder at defendant's premises on November 18, 1964.  The question to decide is whether for purposes of workmen's compensation plaintiff was an employee of defendant at the time of his injury.

Plaintiff became a journeyman electrician in 1929 and so remained.  He never obtained a contractor's license.  In 1959, at age 65, plaintiff commenced drawing social security payments.  To supplement his income he worked on a part-time employment basis for his brother, an electrical contractor, until 1962, after which time he did part-time journeyman electrical repair work on his own.  In late 1964, plaintiff's part-time work was performed almost exclusively for defendant, a chemical manufacturing corporation.  Between the 15th and 20th of each month plaintiff would go to the plant and oil all the motors and do general repair and maintenance work on the electrical equipment.  He was also on call for any breakdown or sudden repair work required.  He was not authorized to do any new work or work requiring a permit.  For that defendant hired electrical contractors.

The majority of the appeal board determined plaintiff to be an independent contractor rather than defendant's employee.  They based this conclusion on the following facts:

"1. Plaintiff provided the same service for other factories and homes.

"2. He deliberately limited his earnings to a total of not more than $100 a month for social security purposes.

"3. No social security tax was deducted by the defendant.

"4. No income tax was deducted by the defendant.

"5. The plaintiff filed an income tax profit and loss from business, Form C.

"6. No W–2 Form filed by the defendant or requested by the plaintiff.

"7. Plaintiff only worked when called, other than once a month for machine oiling.

"8. Plaintiff worked unsupervised.

"9. His work as a tradesman is especially amenable to an independent contractor status.

"10. He kept his own records and did his own billing.

"11. Tax records indicated he did business under a business name.

"12. He earned additional profit through markups on materials.

"13. He used his own tools.

"14. He hired additional help when necessary."

The dissenting opinion is more persuasive and we quote that portion which analyzes the above points.

"The unrebutted proofs presented paint an entirely different picture of the economic realities existing between the disputing parties than does the 14 brush strokes used by my associate in his opinion. Before we turn to the unrebutted proofs which in my opinion show the true status of the economic relationship existing between the defendant and the plaintiff herein, let us examine the 14 reasons assigned by my associate for holding that plaintiff was an independent contractor.

"Several of the 14 reasons assigned as showing an independent contractor relationship flow from the same proofs and are tantamount to restatements

of the first stated. An example of this are items 3, 4, 5, 6, and 11 which relate to the income tax records of the parties which show that defendant did not deduct taxes from the sums paid plaintiff and he, being an honest individual, did keep records of his earnings and did report and pay taxes to the federal government upon the sums received. I cannot believe that evidence, which really shows nothing more than that an employer did not comply with federal rules which require him to withhold taxes from his employee's paycheck, is proof that no contract of hire existed between the parties. Such approach would permit any employer to escape the red tape necessary to collect these taxes by simply stating the legal jingle that the 'person is not my employee,' then proving his own statement by showing that no taxes were deducted from the payments made for the services rendered. In my opinion very little, if any, of the economic realities referred to by Mr. Justice SMITH are involved in the defendant's failure to deduct taxes from the sums paid plaintiff. Furthermore, in the dissent entered by Mr. Justice SMITH in *Powell* [v. *Employment Security Commission* (1956), 345 Mich 455] which was later adopted as controlling law, federal tax records such as those relied upon by Mr. Bowerman, were given the following weight in testing the economic realities between the parties:

" 'It is unnecessary to stress that the ruling of the United States treasury department, made in response to appellants' request, does not control our determination upon these facts. I agree with my brother that it is not necessary to pass upon the impact of the Federal act on the question here presented.'

"In Item #1 Mr. Bowerman states that plaintiff provided the 'same services' for other factories and homes. What were the services provided? In reality nothing but plaintiff's labor which was of a skilled nature. Plaintiff does not deny that he did sell his labor to another employer prior to 1964

on a part-time basis and that he did on occasion do minor electrical repair jobs for neighbors.

\* \* \*

"In reporting and paying his income tax to the collector of internal revenue, plaintiff did use the name Glick Electrical Service upon Federal tax returns, but he could not state why. He had never registered this name with the county, but his brother, who was in the contracting business, had done so. Plaintiff had previously worked for his brother and in all probability did at that time report his income as coming from the Glick Electrical Service. The proofs show that plaintiff had never been a partner in the business with his brother, and there is no evidence which shows that plaintiff advertised himself to the community as being in the electrical contracting business, he had no regular payroll, nor employees.

"In Item #2 my associate states that plaintiff deliberately limits his earnings for social security purposes. This economic reality test which leads my associate to conclude that plaintiff was an independent contractor hardly needs comment here; suffice to state, that many thousands of retirees who work part time after their retirement will be surprised to discover that they have suddenly become independent businessmen, not involved with the economic pitfalls of a contract of hire where they are now employed on a part-time basis.

"Item #7 is another way of saying what was said in Item #2. Plaintiff was hired to oil machines between the 15th and 20th of each month and was called to make repairs only when electrical repairs were needed on the part of defendant.

"Item #8 finds that plaintiff worked unsupervised, but the unrebutted proofs recorded on pages 11, 12, 13, 26, 27, and 28 of the record show to the contrary.

"Members of the Electrical Workers Union will be surprised to discover, by the test set forth in Item #9, that they are 'amenable to an independent

contractor status' and are 'liable to be brought to account' and made 'answerable' for their work status when they suffer injury. (Last two quotes [*sic*] from Webster's International—see amenable).

"Defendant did not require plaintiff to punch a time clock, and plaintiff kept a record of the hours he worked and submitted his statement to defendant. Payment at the rate of $4.50 per each hour worked was then made by the defendant. No taxes were deducted and plaintiff did keep records of the sums received and reported these sums on his Federal income tax returns. It would seem to me that Item #11 should get little weight in assessing the economic realities of the relationship existing between the parties.

"Item #12 would hold plaintiff to be an independent contractor because he earned additional profit through markup of materials he purchased to perform the job assigned. The proofs show that plaintiff used what parts and materials defendant had available, and that defendant's agent gave plaintiff the right to purchase other items needed to do the job. The agent did this because he didn't want to be bothered. Plaintiff was told to submit a billing for the items purchased, and does admit that he did mark up the items which he purchased, and it can be said that he made a profit on these items. However, the full significance of any economic reality test involved in these purchases is disclosed by the following testimony:

* * *

" '*Q*. In replacing parts for Montgomery Company, you would make a list as you went through the plant then ask one of the gentlemen if it was all right to purchase this?

" '*A*. As a rule I would go to the plant superintendent, Mr. Alexander. When I first took over Mr. Alexander told me, I went in and asked him about buying these different things and he says "Dave, I want you to go ahead just as you did before and

I don't want to be bothered with purchasing all these small things". He said, "I want you to go ahead and get it and bill us for it and we will pay it".'

"Mr. Alexander was not called as a witness in this matter.

"Item #13 relies upon the fact that plaintiff used his own tools. The proofs do show that plaintiff did own some of the tools which he used to perform the work assigned. It appears that these tools were nothing more than personal tools that any skilled tradesman would have. The Supreme Court of Michigan has recognized that such an artisan brings the tools of his trade to the work bench. (*Moore v. Fleischman Yeast* [1934], 268 Mich 668.) Larger equipment such as ladders (from which he fell), that were needed to perform the assigned task, were furnished by the defendant. * * *

"Item #14 relies upon testimony which shows that plaintiff reported a $150 labor cost on his income tax returns. The following testimony must have begot conclusion #14:

* * *

" '*The Referee:* Okay. I have no other questions, I don't believe. Yes, I do have one other question.

" 'Your 1964 return shows an item of cost of labor of $150, do you know what that was for?

* * *

" '*A.* Well, I had to have my—I had to have help on this one job. I don't recall just which job it was right now.'

* * *

"The true economic picture portrayed by the proofs presented here shows an established business having the need for the labor of someone to work part time, who was possessed of sufficient skill to care for the machinery, make occasional repair and do so without close supervision. A journeyman electrician with long experience, working for others,

had recently retired and was interested in part-time employment to supplement his retirement income. He sold his skilled labor by the hour, and worked on a part-time basis for a few friends and one other established business. An agent of defendant called plaintiff, and the unrebutted proofs show that the following contract of hire was entered into:

" 'Q. What sort of work were you hired to do for Montgomery?

" 'A. Well, they, Mr. Smith, that was the plant superintendent, he got a hold of me one day after [sic] my brother had sent in his resignation that, well, he only got so bad that he couldn't do anything himself, he couldn't even do book work. He called Mr. Smith, Mr. Smith called me and we had a talk and he wanted me to just go around and supervise everything that was in the shop like oiling motors or whatever their men would get careless, and he wanted me to take care of that and if anything went haywire with the machinery, that is the electric parts of the machinery I was to repair that; but I wasn't to take on any new work. If they had new work that was to be done they would hire an outside electrician, after 1962 when my brother died.'

\* \* \*

"At the time of the injury here in question, the Michigan workmen's compensation statute defined employers and employees who were subject to the act as follows:

"(MCLA § 411.5 [Stat Ann 1968 Rev § 17.145])

" 'Sec. 5. The following shall constitute employers subject to the provisions of this act:

\* \* \*

" 'Private 2. Every person, firm and private corporation, including any public service corporation, who has any person in service under any contract of hire, express or implied, oral or written.'

"(MCLA § 411.7 [Stat Ann 1968 Rev § 17.147])

" 'Sec. 7.  The term "employee" as used in this act shall be construed to mean:

\*   \*   \*

" '2.  Every person in the service of another, under any contract of hire express or implied.' "

At the time of the accident, plaintiff was performing substantially all of his part-time labor for defendant. To maintain that he was holding himself out to the public as performing an independent business service because his neighbors and acquaintances of many years would call to have some work done in their homes would be to distort reality. The reality is that as cited in 1A Larson, Workmen's Compensation Law, § 45.31(a), p 670:

"a regular, recurring, and substantial part of the employer's work in the form of maintenance and repair, has been contracted out to a workman to whom, whether or not he has a public business, it is such a relatively large item that his relationship to the employer is not that of an independent business man."

Workmen's compensation acts were passed as remedial legislation to alleviate social and economic problems of workers. The ills sought to be cured by the passage of such acts demand the acts be given a liberal interpretation.

We find that the plaintiff was an employee of the defendant. The Workmen's Compensation Appeal Board is reversed and the decision of the hearing referee is reinstated. Costs to plaintiff.

All concurred.