## McKISSIC v BODINE

1. WORKMEN'S COMPENSATION—EMPLOYEE—EMPLOYER RELATIONSHIP—ECONOMIC REALITY.

The test to determine whether an employee-employer relationship exists for purposes of the Workmen's Compensation Act should include consideration of whether: (1) the employer will incur liability if the relationship terminates at will; (2) the work performed is an integral part of the employer's business; (3) the employee primarily depends upon the wages for living expenses; (4) the employee furnishes equipment and materials; (5) the employee holds himself out to the public as able to perform certain tasks; (6) the work involved is customarily performed by an independent contractor; along with (7) the factors of control, payment of wages, maintenance of discipline, and the right to engage or discharge employees; and (8) weighting those factors which will most favorably effectuate the purposes of the act.

2. WORKMEN'S COMPENSATION—EMPLOYEE-EMPLOYER RELATIONSHIP—ECONOMIC REALITY.

No single factor taken alone can be controlling in determining whether an employee-employer relationship exists for purposes of the Workmen's Compensation Act.

3. WORKMEN'S COMPENSATION—EMPLOYER-EMPLOYEE RELATIONSHIP—INDEPENDENT CONTRACTOR.

Defendant was not liable as an employer, under the provisions of the Workmen's Compensation Act, to a plaintiff claiming benefits for injuries sustained where plaintiff was primarily employed by another, furnished his own tools, worked only when he was available, contracted a price for each job, and held himself out to the public as a handyman.

Appeal from Workmen's Compensation Appeal Board. Submitted Division 2 May 3, 1972, at Lans-

REFERENCE FOR POINTS IN HEADNOTES
[1–3] 58 Am Jur, Workmen's Compensation § 132.

ing. (Docket No. 12780.) Decided July 26, 1972. Leave to appeal denied, 388 Mich 780.

John S. McKissic presented his claim against Harold Bodine and Aetna Casualty and Surety Company for workmen's compensation benefits for injuries received in a fall from a ladder. Decision for defendants by hearing referee affirmed by the Workmen's Compensation Appeal Board. Plaintiff appeals. Affirmed.

*Abood, Abood & Abood, P. C.,* for plaintiff.

*Foster, Lindemer, Swift & Collins* (by *David C. Coey),* for defendants.

Before: QUINN, P. J., and FITZGERALD and VAN VALKENBURG,* JJ.

VAN VALKENBURG, J. The sole issue raised in this appeal is whether plaintiff was an employee of the defendant Harold Bodine and thereby entitled to workmen's compensation as provided by law at the time of his injury on January 19, 1969. The referee and a majority of the Workmen's Compensation Appeal Board held that he was an independent contractor and therefore not entitled to benefits.

The facts are not materially in dispute. The plaintiff was employed full-time at one of the Fisher Body plants, but on the day in question was off work due to the fact that he was recovering from a prior injury. He held himself out as a part-time handyman, advertised as such, and caused a sign, "McKissic Contracting", to be painted on the side of his truck. He furnished his own materials,

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

engaged his own helpers, and worked at such times as he would be available. The activities undertaken included repairs and general maintenance such as cement work, painting, electrical wiring, and general handy work.

Defendant Bodine, who owned certain rental properties, often made use of these services. Each job was carried out as a separate contract; plaintiff either making a bid or being told by Bodine what he would be willing to pay. Plaintiff retained the option of accepting or rejecting any offer. It was on this basis that plaintiff and Bodine agreed upon the figure for the job of installing certain plastic upon an apartment window. During the course of this undertaking plaintiff fell from a ladder and sustained the injury for which he now seeks compensation.

After the accident, the defendant filed a Form 100. Also, it appears that defendant carried workmen's compensation insurance, not on this particular plaintiff but on anyone who qualified for benefits under the provisions of the act.

Heretofore, the determination of whether or not a given person was an employee or an independent contractor centered on the question of control, as will be hereinafter explained. That alone is no longer the law in this state.

The new "economic reality" theory was first enunciated by the United States Supreme Court in *United States v Silk,* 331 US 704; 67 S Ct 1463; 91 L Ed 1757 (1947), in which the Court maintained that the primary consideration in determining the definition of the word "employee" is whether the definition of the statutory language is sufficient to secure to the individual the rights and protection afforded by the legislation.

The first appearance in Michigan of the "eco-

nomic reality" theory is found in a dissenting opinion authored by Justice SMITH in *Powell v Employment Security Commission,* 345 Mich 455, 464, 478 (1956). There the plaintiff, the Powell Studio, engaged several women, including one Rebecca Cohen, for the express purpose of retouching negatives. This work was carried on in their respective homes. The majority of the Court at that time held that the ladies were independent contractors.

We quote from the dissenting opinion:

"They are utterly dependent, as a matter of economic reality, upon another, their employer. It was the distress of such dependent workers, and their families, that this act was designed, in part, to alleviate."

We quote further:

"The test employed is one of economic reality. It looks at the task performed, whether or not it is a part of a larger common task, 'a contribution to the accomplishment of a common objective.'"

There the matter rested until our Supreme Court handed down its decision in *Tata v Muskovitz,* 354 Mich 695, 699 (1959):

"It is time now to complete the cycle of departure from and return to *all* of the measures by which, under the clear weight of authority in this country, the relationship of employer and employee is rightfully identified for compensatory purposes. I move, then, with sight aimed at definite settlement of the steadily recurring question the parties—in the light of the quoted and adopted finding of facts—have stated and counterstated, that we now establish Mr. Justice SMITH's dissenting opinion in *Powell v Employment Security Commission,* 345 Mich 455, 462 [1956], as proper guide to relevant interpretation of the workmen's compensation law. Tested by such dissent, the appeal board was clearly

right in holding that the relationship of employer and employee existed between plaintiff's decedent, and the defendant Muskovitz, at the time of the fatal cave-in of the trench."

Later Justice SMITH had occasion to enlarge upon this concept in *Schulte v American Boxboard Co,* 358 Mich 21, 33 (1959):

"Control is a factor, as is payment of wages, hiring and firing, and the responsibility for the maintenance of discipline, but the test of economic reality views these elements as a whole, assigning primacy to no single one."

The Supreme Court has since reaffirmed that "economic reality" rather than "control" is the proper test. See *Goodchild v Erickson,* 375 Mich 289 (1965).

This Court had the occasion to consider the issue in *Cronk v Chevrolet Local 659,* 32 Mich App 394, 398 (1971), wherein it was stated:

"The determination of the master-servant relationship for purposes of the Workmen's Compensation Act no longer depends upon control. Rather, the Court looks to the 'economic reality' of the relationship."

The phrase "economic reality" has received rather scant consideration in other jurisdictions. However, we do have *Kreisler v Dennis Bridgehampton Construction Corp,* 37 AD2d 891; 325 NYS2d 301 (1971):

"Various factors such as the right to control the methods of payment, the furnishing of equipment, the right to fire and the so-called relative nature of the work test are relevant in determining whether an employment exists, it being possible often to establish the relationship on the basis of one of these elements alone."

Patently, the problem with economic reality is that it is a conclusion, and it is not a test in the sense that there are any well-defined criteria upon which an objective determination can be based. However, each of the foregoing decisions contains some hints. We will attempt, for the benefit of both bench and bar, to coordinate these in a manner which will be understood.

The principal facets or tests gleaned from these cases for determining the nature of the existing relationship between a given employer and employee, based upon the principles of economic reality enunciated in the above noted cases, appear to be as follows:

First, what liability, if any, does the employer incur in the event of the termination of the relationship at will?

Second, is the work being performed an integral part of the employer's business which contributes to the accomplishment of a common objective?

Third, is the position or job of such a nature that the employee primarily depends upon the emolument for payment of his living expenses?

Fourth, does the employee furnish his own equipment and materials?

Fifth, does the individual seeking employment hold himself out to the public as one ready and able to perform tasks of a given nature?

Sixth, is the work or the undertaking in question customarily performed by an individual as an independent contractor?

Seventh, control, although abandoned as an exclusive criterion upon which the relationship can be determined, is a factor to be considered along with payment of wages, maintenance of discipline and the right to engage or discharge employees.

Eighth, weight should be given to those factors which will most favorably effectuate the objectives of the statute.

Keeping in mind the purposes of the statute, the foregoing rules should be applied as a whole and on a basis of common sense. No one can be singled out as controlling. By way of illustration, an automobile mechanic usually furnishes his own tools, but if hired to work in a public garage would undoubtedly be classified as an employee.

Examination of the facts in the case at bar indicates that the majority of the Workmen's Compensation Appeal Board used the discredited "right of control" test, but arrived at the right conclusion.

The plaintiff was primarily employed by another. The doing of odd jobs was a method of securing extra cash for his own enjoyment. He furnished his own tools. He worked for Bodine only when he was available. He contracted each job for a given price, and held himself out to the public as a handyman. He was fully protected by the Workmen's Compensation Act in his regular and primary employment. As a matter of fact, he was recovering from an injury at the time of this accident.

If he desired protection while acting as an independent contractor, he could have made arrangements for accident insurance. Casual employers should not be burdened with this added responsibility under these circumstances.

The plaintiff relies upon *Glick v H A Montgomery Co,* 22 Mich App 678 (1970). While we agree with the holding in *Glick,* we note that there the plaintiff worked primarily for the defendant and had no other income outside of his social security and rare jobs on the side; therefore, the situation in that case can be distinguished when we apply

the principles of economic reality as hereinbefore set forth.

Accordingly, the decision of the majority of the Workmen's Compensation Appeal Board is hereby affirmed.

All concurred.