*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

DEJAN UMICEVIC,

        Plaintiff-Appellant,

and

ZMC PHARMACY, LLC,

        Intervening Plaintiff,

v

BERKLEY CASUALTY COMPANY,

        Defendant-Appellee.

UNPUBLISHED
October 10, 2024
11:27 AM

No. 368886
Wayne Circuit Court
LC No. 22-004781-NF

Before: CAMERON, P.J., and K. F. KELLY and GARRETT, JJ.

PER CURIAM.

In this action under the no-fault act, we are tasked with deciding whether plaintiff, Dejan Umicevic, was an employee entitled to personal injury protection (PIP) benefits from defendant, Berkley Casualty Company, as the insurer of the semi-truck Umicevic was driving at the time of his accident. The trial court granted summary disposition to Berkley under MCR 2.116(C)(10), but we agree with Umicevic that the trial court's decision should be reversed and the case remanded for further proceedings.

## I. BACKGROUND

### A. FACTS

On November 23, 2020, Umicevic applied to become a driver for Red Line Logistics, Inc., and, several months later, Umicevic completed a form provided by Red Line to obtain occupational accident insurance through Zurich American Insurance Company. On the form, Umicevic certified that he was an independent contractor and not an employee of Red Line. This no-fault case arises from injuries Umicevic sustained on July 28, 2021, when he drove a semi-truck owned

-1-

by Red Line off the road and collided with a power line tower in Texas. On the date of the accident, Umicevic was delivering goods from Michigan to Texas on behalf of Red Line. Umicevic had no health insurance or automobile insurance but, as owner of the truck, Red Line paid for insurance on the vehicle through Berkley. After the accident, Umicevic incurred, among other expenses, medical costs and lost wages. During his recovery, Umicevic received products and services from ZMC Pharmacy, LLC, which intervened as a plaintiff after Umicevic filed his complaint in this case.

## B. PROCEDURAL HISTORY

Umicevic alleged in his complaint that Berkley was liable for his damages from the accident under a valid no-fault insurance policy and the no-fault act, MCL 500.3101 *et seq*. ZMC's complaint alleged that Berkley was liable for no-fault benefits, including for products and services ZMC provided to Umicevic.

Berkley moved for summary disposition under MCR 2.116(C)(10) and argued that there was no genuine issue of material fact regarding Umicevic's status as an independent contractor and that he was not entitled to coverage under the no-fault insurance policy or the no-fault act, MCL 500.3101 *et seq*. Specifically, Berkley asserted that, under MCL 500.3114(1), Umicevic must look to his own insurer for no-fault benefits unless one of the statutory exceptions applies. But Berkley maintained that the only potentially applicable exception, MCL 500.3114(3), did not apply because Umicevic could not show that he was an employee at Red Line.

In response, Umicevic argued that evidence at least established a genuine issue of material fact that he was a Red Line employee and that the existence of Zurich, as the occupational accident insurer, did not abrogate Zurich's duty to pay benefits to Umicevic. Umicevic and ZMC further argued that Umicevic established the existence of an employer-employee relationship with Red Line under the economic-reality test set forth in *Adanalic v Harco Nat'l Ins Co*, 309 Mich App 173, 191; 870 NW2d 731 (2015).

The trial court agreed with Berkley that Umicevic and ZMC failed to present sufficient evidence to raise a genuine factual dispute regarding his status as an independent contractor and, therefore, Berkley was not required to pay PIP benefits under its policy with Red Line. The trial court entered an order granting summary disposition to Berkley. Umicevic moved for reconsideration, but the trial court denied the motion, and Umicevic now appeals.

## II. ANALYSIS

### A. STANDARDS OF REVIEW AND APPLICABLE LAW

"[This Court] review[s] de novo a trial court's decision on a motion for summary disposition." *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). "A motion under MCR 2.116(C)(10) . . . tests the *factual sufficiency* of a claim." *El-Khalil*, 504 Mich at 160. "When considering such a motion, a trial court must consider all evidence submitted by the parties in the light most favorable to the party opposing the motion." *Id*. "A motion under MCR 2.116(C)(10) may only be granted when there is no genuine issue of material fact." *Id*. "A genuine issue of material fact exists when the record leaves open an issue upon which reasonable

minds might differ." *Id*. (quotation marks and citation omitted). This case also involves the interpretation of the no-fault act. "Statutory interpretation is a question of law, which this Court also reviews de novo." *O'Neal v St John Hosp & Med Ctr*, 487 Mich 485, 493; 791 NW2d 853 (2010).

"When determining the priority of insurers liable for no-fault PIP benefits, courts must examine MCL 500.3114." *Duckworth v Cherokee Ins Co*, 333 Mich App 202, 210-211; 963 NW2d 610 (2020) (quotation marks and citation omitted). MCL 500.3114(1) states in pertinent part:

> Except as provided in subsections (2), (3), and (5), a personal protection insurance policy . . . applies to accidental bodily injury to the person named in the policy . . . if the injury arises from a motor vehicle accident. . . . If personal protection insurance benefits or personal injury benefits . . . are payable to or for the benefit of an injured person under his or her own policy . . . the injured person's insurer shall pay all of the benefits up to the coverage level applicable . . . to the injured person's policy, and is not entitled to recoupment from the other insurer.

"Under MCL 500.3114(1), a person seeking no-fault benefits must generally look first to his or her own insurer, unless one of the exceptions in MCL 500.3114(2), (3), or (5) applies." *Duckworth*, 333 Mich App at 211 (quotation marks and citation omitted). MCL 500.3114(3) states, in relevant part: "An employee . . . who suffers accidental bodily injury while an occupant of a motor vehicle owned or registered by the employer, shall receive personal protection insurance benefits to which the employee is entitled from the insurer of the furnished vehicle." However, "[a]n independent contractor is not considered an employee for purposes of the no-fault act." *Adanalic*, 309 Mich App at 191 (quotation marks and citation omitted).

"[This Court] adopted the economic-reality test to determine when the injured party was an employee for purposes of MCL 500.3114(3)." *Duckworth*, 333 Mich App at 211. "[T]he *McKissic*[1] factors should be considered as well as those noted in *Adanalic* when determining whether a worker is an employee or independent contractor under the no-fault act." *Id*. at 213-214. The *Adanalic* factors "include: (a) control of the worker's duties, (b) payment of wages, (c) right to hire, fire and discipline, and (d) the performance of the duties as an integral part of the employer's business towards the accomplishment of a common goal." *Adanalic*, 309 Mich App at 191 (quotation marks and citation omitted).[2] The *McKissic* factors include:

---

[1] *McKissic v Bodine*, 42 Mich App 203, 208-209; 201 NW2d 333 (1972). In *Woodring v Phoenix Ins Co*, 325 Mich App 108, 114-115; 923 NW2d 607 (2018), this Court stated that, although we are not required to follow opinions from this Court decided before November 1, 1990, "they are nevertheless considered to be precedent and entitled to significantly greater deference than are unpublished cases."

[2] "While we have routinely cited these four general factors, we have also recognized that [n]o single factor is controlling and, indeed, the list of factors is nonexclusive and other factors may be

First, what liability, if any, does the employer incur in the event of the termination of the relationship at will?

Second, is the work being performed an integral part of the employer's business which contributes to the accomplishment of a common objective?

Third, is the position or job of such a nature that the employee primarily depends upon the emolument for payment of his living expenses?

Fourth, does the employee furnish his own equipment and materials?

Fifth, does the individual seeking employment hold himself out to the public as one ready and able to perform tasks of a given nature?

Sixth, is the work or the undertaking in question customarily performed by an individual as an independent contractor?

Seventh, control, although abandoned as an exclusive criterion upon which the relationship can be determined, is a factor to be considered along with payment of wages, maintenance of discipline and the right to engage or discharge employees.

Eighth, weight should be given to those factors which will most favorably effectuate the objectives of the statute. [*McKissic v Bodine*, 42 Mich App 203, 208-209; 201 NW2d 333 (1972).]

"We have always recognized that the four factors discussed in . . . *Adanalic* are not exhaustive, and the *McKissic* factors are consistent with those set forth in *Adanalic* and provide additional clarity. And both the four-factor and the eight-factor tests have been applied by the Supreme Court." *Duckworth*, 333 Mich App at 213 (emphasis added).

## B. APPLICATION OF THE LAW

As discussed, the trial court considered the *Adanalic* factors and concluded that Umicevic failed to establish a genuine issue of fact that he was an employee rather than an independent contractor. On that basis, the court ruled that Umicevic could not maintain his claim for no-fault benefits from Berkley. When applying the economic-reality test, the trial court implicitly considered some overlapping *McKissic* factors, but did not explicitly consider them, and did not consider the *McKissic* factors that require additional inquiry into the economic reality of Umicevic's work for Red Line. Although we acknowledge that this Court's ruling in *Duckworth* stated that courts "should" consider both the *Adanalic* and *McKissic* factors, which suggests a measure of discretion, it is nonetheless best practice to do so, and we hold that the trial court should have done so here. *Id*. "Indeed, there is substantial overlap between the two tests. . . . At the same time, the *McKissic* factors are particularly applicable when the nature of the relationship is at issue,

---

considered as each individual case requires." *Duckworth*, 333 Mich App at 211-212 (quotation marks and citation omitted).

-4-

i.e., whether the worker is an employee or an independent contractor." *Id*. at 213. Clearly, in this case, the nature of Umicevic's relationship with Red Line is a central question.

Under the economic-reality test, any analysis to determine "whether a worker is an employee or independent contractor under the no-fault act" begins by reviewing the *Adanalic* factors, "which overlap with the first, second, and seventh *McKissic* factors." *Duckworth*, 333 Mich App at 213-214. The record reflects that, with regard to the first factor, the control of Umicevic's duties, *Adanalic*, 309 Mich App at 191, evidence showed that Red Line controlled some of Umicevic's duties, including providing time lines for his deliveries. Red Line also provided details about each load through phone calls and a cell phone application.

According to Umicevic, he would typically pick up loads assigned to him by Red Line and no record evidence showed that Umicevic had a contractual right to refuse a load or to choose loads from different companies. Umicevic's activities, including his driving time and stops were also tracked by Red Line's electronic logbook. If Umicevic had a problem with a truck, he contacted the dispatch or safety manager at Red Line. The trucks also bore Red Line's logos. Red Line, however, did not mandate that Umicevic use specific routes. Umicevic used his personal cell phone and a global positioning system to navigate and he had discretion to decide when to take breaks and make stops. On the basis of this evidence, Umicevic presented evidence to establish a genuine issue of material fact that Red Line controlled the duties of his work.

The second factor pursuant to *Adanalic* considers the payment of wages. *Id*. at 191. Evidence showed that Umicevic received a check from Red Line for a percentage of each load and, as noted, Red Line did not deduct federal and state income taxes from those checks and it issued Umicevic a 1099 tax form. On the other hand, evidence also showed that Red Line paid for many of Umicevic's operating costs, including fuel, tolls, and maintenance. Accordingly, some, but not all evidence showed that Umicevic may have been an independent contractor in the manner he was paid.

On the third factor, Red Line's right to hire, fire, and discipline Umicevic, *Id*. at 191, the parties presented minimal, but competing evidence. The record does not disclose whether the relationship between Umicevic and Red Line was terminable at will by either party, although evidence did show that Red Line could penalize Umicevic for any noncompliance with Red Line's electronic logbook. Umicevic completed paperwork when he was hired by Red Line, but the record does not indicate the specific forms Red Line required or their contents. Also, Red Line sent someone to accompany Umicevic on his first delivery, but did not formally train Umicevic.

The fourth *Adanalic* factor concerns "whether the *type of work* is integral to the business." See *Duckworth*, 333 Mich App at 216. The record shows that Red Line operated a trucking business and Umicevic's duties as a truck driver for income were integral to Red Line's business of providing trucking services. This factor does not concern whether Umicevic, as a particular worker, was integral to the business. *Id*. Thus, it is clear that Umicevic presented evidence that his type of work was integral to Red Line's business which tends to show an employer-employee relationship.

The remaining factors that the trial court should have considered, include the third, fourth, fifth, and eighth *McKissic* factors, none of which the trial court addressed. See *Duckworth*, 333

Mich App at 216-217. The third *McKissic* factor is related to whether Umicevic relied on the job for his living expenses. Umicevic presented evidence that he worked solely for Red Line and that his schedule and assignments from Red line did not allow him to work elsewhere. Umicevic also testified he considered himself to be Red Line's "employee." Because Red Line provided Umicevic's primary source of income, this evidence supports a finding the Umicevic was an employee of Red Line rather than an independent contractor.

Under the fourth *McKissic* factor, regarding whether Umicevic furnished his own equipment and materials, evidence showed that the only items Umicevic owned that he used while working for Red Line was his cell phone and GPS. The record reflects that Red Line owned the trucks Umicevic drove for Red Line, and that the company provided Umicevic materials needed to carry out his driving duties, including fuel, toll payments, vehicle maintenance, and the electronic logbook. Pursuant to the fifth *McKissic* factor, related to whether Umicevic held himself out to the public as ready to perform the job, Umicevic's testimony suggests that he considered himself an employee of Red Line and did not hold himself out to the public as being available to drive other trucks for other companies. For these reasons, the fourth and fifth *McKissic* factors establish questions of material fact that Umicevic may have been an employee of Red Line.

Under the eighth *McKissic* factor, we are persuaded that Umicevic presented evidence that the objectives of MCL 500.3114(3) would be effectuated by finding that Umicevic was an employee of Red Line, entitling him to benefits from Berkley for a vehicular accident involving a truck owned by Red Line which maintained its policy of insurance. See *Duckworth*, 333 Mich App at 216-217.

As this Court stated in *Duckworth*, all factors under the economic-reality test should be considered, *Duckworth*, 333 Mich App at 219, and, when applying the economic-reality test, courts should consider the totality of the circumstances, *Clark v United Technologies Auto, Inc*, 459 Mich 681, 688; 594 NW2d 447 (1999). In doing so in this case, the economic-reality test suggests that there was sufficient evidence to establish a disputed question of fact that an employee-employer relationship may have existed between Red Line and Umicevic. For that reason, the trial court erred in granting summary disposition to Berkley by holding that Umicevic was not an employee as a matter of law under MCL 500.3114(3).

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Thomas C. Cameron
/s/ Kirsten Frank Kelly
/s/ Kristina Robinson Garrett