*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

UNIVERSITY OF MICHIGAN REGENTS,

Plaintiff,

v

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,

Defendant-Appellant,

and

AUTO-OWNERS INSURANCE COMPANY, HOME-OWNERS INSURANCE COMPANY, GEICO GENERAL INSURANCE COMPANY, GEICO INDEMNITY COMPANY, and GOVERNMENT EMPLOYEES INSURANCE COMPANY,

Defendants-Appellees,
and

MICHIGAN ASSIGNED CLAIMS PLAN and MICHIGAN AUTOMOBILE INSURANCE PLACEMENT FACILITY,

Defendants.

UNPUBLISHED
January 20, 2026
11:38 AM

No. 372975
Washtenaw Circuit Court
LC No. 23-001551-NF

UNIVERSITY OF MICHIGAN REGENTS,

Plaintiff,

v

No. 372990
Washtenaw Circuit Court

-1-

GEICO GENERAL INSURANCE COMPANY,
GEICO INDEMNITY COMPANY, and
GOVERNMENT EMPLOYEES INSURANCE
COMPANY,

LC No.  23-001551-NF

   Defendants-Appellants,

and

AUTO-OWNERS INSURANCE COMPANY and
HOME-OWNERS INSURANCE COMPANY,

   Defendants-Appellees,

and

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY, MICHIGAN
ASSIGNED CLAIMS PLAN, and MICHIGAN
AUTOMOBILE INSURANCE PLACEMENT
FACILITY,

   Defendants.

---

KADEN KNIGHT,

   Plaintiff-Appellee,

v

No.  373877
Wayne Circuit Court

AUTO-OWNERS INSURANCE COMPANY,

LC No.  23-013988-NF

   Defendant-Appellant,

and

GEICO GENERAL INSURANCE COMPANY,
GEICO INDEMNITY COMPANY,
GOVERNMENT EMPLOYEES INSURANCE
COMPANY, and STATE FARM MUTUAL
AUTOMOBILE INSURANCE COMPANY,

   Defendants-Appellees,

and

MICHIGAN ASSIGNED CLAIMS PLAN and
MICHIGAN AUTOMOBILE INSURANCE
PLACEMENT FACILITY,

        Defendants.

---

Before:  SWARTZLE, P.J., and GARRETT and WALLACE, JJ.

PER CURIAM.

This consolidated appeal arises from one car accident, two trial courts' decisions on motions for summary disposition, and three subsequent appeals.  Kaden Knight performed work for his grandmother's company and was driving a company vehicle when he was involved in an accident.  Knight sued the insurer of the company vehicle, as well as the insurers of vehicles in his household, in Wayne County for personal protection insurance (PIP) benefits.  One of Knight's care providers also sued the insurers for services provided, but in Washtenaw County.

The insurer of the company vehicle moved for summary disposition in both cases, arguing that Knight was an independent contractor and not an employee of the company, and so, the insurer of the company vehicle was not first in priority.  The insurers of vehicles in Knight's household opposed such motions and argued that Knight was an employee.  The Washtenaw County trial court found that Knight was an independent contractor and granted the company vehicle insurer's motion for summary disposition.  The other insurers separately filed applications for leave to appeal the decision.  In contrast, the Wayne County trial court denied motion for summary disposition, and the company vehicle insurer appealed that decision.

Because the factors of the economic-reality test indicate that Knight is an employee of his grandmother's company, we affirm the Wayne County trial court's denial of summary disposition and reverse the Washtenaw County trial court's grant of summary disposition.

## I. BACKGROUND

Knight's grandmother is Judith Cook, owner of Bear Affair, Inc.  Bear Affair is a sports apparel and gear company, with a focus on gymnastics gear.  Bear Affair employed between five and ten employees who would produce products and sell the products at gymnastics meets.  Knight testified that he worked for Bear Affair for most of his life, but also worked for various other businesses, including a landscaping company, before and after beginning full-time work with Bear Affair.  Before the accident, Knight worked between 35 to 60 hours per week for Bear Affair which included packing and organizing merchandise at Bear Affair's physical commercial building, cleaning, performing yard work, and raising fish at the location.  In addition, about twice a month, Knight loaded and unloaded goods into an assigned vehicle owned by Bear Affair, drove the vehicle to and from gymnastic meets, and sold the goods at the meets.

Knight was paid hourly, but he did not have pay stubs and did not have a written contract with Bear Affair for his work.  Cook was his immediate supervisor and told Knight his schedule,

-3-

but they also mutually decided hours and Knight could decline jobs. His documentation of the amount of hours he worked "was pretty casual" and usually consisted of telling his grandmother verbally or through text message. Knight was either paid in cash or his grandmother would buy him items. Knight's aunt and brother also worked for Bear Affair and received $4,000 a month salary, sometimes by paycheck and sometimes in cash. Knight did not receive a W-2; his aunt and brother possibly received W-2s before Cook's husband, who handled the bookkeeping, passed away.

Knight was driving a 2019 Ford Transit, owned by Bear Affair, from West Virginia back to Michigan after a gymnastics meet when the vehicle ran out of gas in Pennsylvania. The record of the events following are unclear, but Knight testified that he pulled off to the side of the road and exited the vehicle. The last thing Knight remembered before waking up in the ambulance was a phone call to his mother. Knight was in the hospital for about three months as a result of his injuries. After being released, Knight received care at the University of Michigan Hospital System, including surgery to repair his ACL and MCL, nerve treatment in his leg, and physical therapy.

In Wayne County, Knight sued Auto-Owners Insurance Company and Home-Owners Insurance Company (collectively, "Auto Owners"); GEICO General Insurance Company, GEICO Indemnity Company, and Government Employees Insurance Company (collectively, "GEICO"); State Farm Mutual Automobile Insurance Company ("State Farm"); and the Michigan Assigned Claims Plan and Michigan Automobile Insurance Placement Facility for PIP benefits. Auto Owners insured the company vehicle that was involved in the accident. Knight's brother and stepfather, who Knight resided with, had vehicles insured with GEICO and State Farm, respectively. About one month later, the University sued the insurers in Washtenaw County to recover for services provided to Knight as a result of the accident.

In both the Wayne and Washtenaw cases, Auto Owners moved for summary disposition under MCR 2.116(C)(10). Auto Owners argued that on his application for PIP benefits, Knight identified himself as an independent contractor and that using the four factors of the economic-reality test, Knight should be considered an independent contractor, not an employee, and therefore not be entitled to PIP benefits from Auto Owners. GEICO and State Farm opposed Auto Owners' motion, arguing that the eight factors from *McKissic v Bodine*, 42 Mich App 203, 208-209; 201 NW2d 333 (1972), as applied to the economic-reality test in *Duckworth v Cherokee Ins Co*, 333 Mich App 202; 963 NW2d 610 (2020), indicated that Knight was an employee, and not an independent contractor.

The Washtenaw County trial court held a hearing and decided Auto Owner's motion for summary disposition in the case brought by the University. At the hearing on the motion, Auto Owners argued that the dispute was the application of the facts to the law, and argued that Knight was an independent contractor because he did not receive a W-2, he did not receive a monthly salary like his aunt and brother, and he was not supervised at meets. GEICO argued that Knight was an employee because he could be terminated at will, his sales were integral to the business, he did not supply his own equipment, and he only performed sales for Bear Affair. The Washtenaw County trial court found that Knight was an independent contractor because the relationship was "a far less more informal family relationship" than an employer-employee relationship and compared it to a grandson mowing the lawn. The Washtenaw County trial court granted Auto

Owners' motion for summary disposition, found that there was no PIP coverage through Auto Owners for Knight, and dismissed Auto Owners from the case.

After the Washtenaw County trial court made its decision, the Wayne County trial court held a hearing on Auto Owners' motion for summary disposition in Knight's case. After the parties argued their positions, the Wayne County trial court found that Knight was an employee because the vehicle he was driving was a company vehicle and he was instructed on where to travel. The Wayne County trial court denied Auto Owners' motion for summary disposition, found Auto Owners first in priority for PIP benefits, and dismissed GEICO and State Farm from the matter.

After receiving the Wayne County trial court's decision, State Farm and GEICO informed the Washtenaw County trial court of the Wayne County trial court's decision in a supplement to a motion for reconsideration. The Washtenaw County trial court ultimately denied defendants' motion for reconsideration. State Farm applied for leave to appeal the Washtenaw County trial court's order to this Court, which was granted and became Docket No. 372975. GEICO separately applied for leave to appeal the Washtenaw County trial court's decision, which became Docket No. 372990. And in the Wayne County case, Auto Owners filed an application for leave, which led to Docket No. 373877.

## II. ANALYSIS

On appeal, GEICO and State Farm argue that the Washtenaw County trial court erred in finding that Knight was an independent contractor, granting Auto Owners motion' for summary disposition, and dismissing Auto Owners as a party. In contrast, Auto Owners, as appellant in the Wayne County case, argues that the Wayne County trial court erred in finding that Knight was an employee, denying Auto Owners' motion for summary disposition, and dismissing GEICO and State Farm as parties. The Court reviews de novo the trial courts' decisions on motions for summary disposition. *Maiden v Rozwood*, 461 Mich 109, 119; 597 NW2d 817 (1999). "When deciding a motion for summary disposition under MCR 2.116(C)(10), we consider the evidence submitted in a light most favorable to the nonmoving party." *Payne v Payne*, 338 Mich App 265, 274; 979 NW2d 706 (2021). "Summary disposition is appropriate when there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *Id*. (cleaned up).

MCL 500.3114(1) provides that a PIP policy "applies to accidental bodily injury to the person named in the policy, the person's spouse, and a relative of either domiciled in the same household." "A person seeking no-fault benefits must generally look first to his or her own insurer, unless one of the exceptions in MCL 500.3114(2), (3), or (5) applies." *Duckworth*, 333 Mich App at 211 (cleaned up). MCL 500.3114(3) provides the priority line-jumping exception that an employee "who suffers accidental bodily injury while an occupant of a motor vehicle owned or registered by the employer, shall receive personal protection insurance benefits to which the employee is entitled from the insurer of the furnished vehicle."

In this case, MCL 500.3114(1) provides that generally GEICO or State Farm would be the first insurers in priority because Knight is a relative and domiciled in the same household as people named in their policies. But, GEICO and State Farm argue that Knight is an employee of Bear Affair and so Auto Owners, as insurer of Bear Affair's vehicle involved in the accident, is first in

priority. Auto Owners argues that Knight is an independent contractor and not an employee and so, the line-jumping provision in MCL 500.3114(3) does not apply.

An injured party is determined to be an employee and not an independent contractor by applying the economic-reality test which includes four factors: "(a) control of the worker's duties, (b) payment of wages, (c) right to hire, fire and discipline, and (d) the performance of the duties as an integral part of the employer's business towards the accomplishment of a common goal." *Adanalic v Harco Nat Ins Co*, 309 Mich App 173, 190-191; 870 NW2d 731 (2015) citing *Parham v Preferred Risk Mut Ins Co*, 124 Mich App 618, 624-625; 335 NW2d 106 (1983). Although the Court has routinely cited these four general factors when determining the employment relationship, the Court has "also recognized that no single factor is controlling and, indeed, the list of factors is nonexclusive and other factors may be considered as each individual case requires." *Duckworth*, 333 Mich App at 211-212 (cleaned up).

In *McKissic*, 42 Mich App at 201, this Court used eight factors to determine the nature of an employment relationship in the context of a worker's compensation case:

> First, what liability, if any, does the employer incur in the event of the termination of the relationship at will?

> Second, is the work being performed an integral part of the employer's business which contributes to the accomplishment of a common objective?

> Third, is the position or job of such a nature that the employee primarily depends upon the emolument for payment of his living expenses?

> Fourth, does the employee furnish his own equipment and materials?

> Fifth, does the individual seeking employment hold himself out to the public as one ready and able to perform tasks of a given nature?

> Sixth, is the work or the undertaking in question customarily performed by an individual as an independent contractor?

> Seventh, control, although abandoned as an exclusive criterion upon which the relationship can be determined, is a factor to be considered along with payment of wages, maintenance of discipline and the right to engage or discharge employees.

> Eighth, weight should be given to those factors which will most favorably effectuate the objectives of the statute.

In *Duckworth*, this Court determined that the eight factors used in *McKissic* also applied to an employee determination under MCL 500.3114(3):

> This Court has recognized the varying formulations of the economic-reality test and concluded that "[t]he tests are basically the same and each provides a rational framework." *Williams v Cleveland Cliffs Iron Co*, 190 Mich App 624, 627, 476 NW2d 414 (1991). Indeed, there is substantial overlap between the two tests, which share common origins in worker's compensation cases. At the same time, the

> *McKissic* factors are particularly applicable when the nature of the relationship is at issue, i.e., whether the worker is an employee or an independent contractor. *McKissic*, 42 Mich App at 208, 201 NW2d 333. We have always recognized that the four factors discussed in *Parham* and *Adanalic* are not exhaustive, and the *McKissic* factors are consistent with those set forth in *Adanalic* and provide additional clarity. And both the four-factor and the eight-factor tests have been applied by the Supreme Court. Accordingly, we conclude that the *McKissic* factors should be considered as well as those noted in *Adanalic* when determining whether a worker is an employee or independent contractor under the no-fault act. [*Duckworth*, 333 Mich App at 213-214 (cleaned up).]

Because the "economic reality test looks to the totality of the circumstances surrounding the work performed," *Chilingirian v City of Fraser*, 194 Mich App 65; 486 NW2d 347 (1992), the trial courts can properly consider both the *Adanalic* and *McKissic* factors when determining whether a worker is an employee or independent contractor under the no-fault act. And, regardless, the Court must follow *Duckworth*, a published opinion. See MCR 7.215(J)(1).

An analysis of the *McKissic* and *Adanalic* factors leads the Court to conclude that Knight is an employee of Bear Affair. The first *McKissic* factor (employer liability in the event of termination) and the third *Adanalic* factor (right to fire) indicate that Knight is an employee. "If the worker can be fired without have any legal recourse, i.e., a breach-of-contract claim, then it is likely the worker is an employee, not an independent contractor who would have such rights." *Duckworth*, 333 Mich App at 215 (cleaned up). If Cook terminated Knight, nothing indicates that he would have recourse against her. The parties did not have an agreement that Knight would work a certain amount of meets to fulfill his obligations, a requirement that an independent contractor might have. "This indicates an at-will employee relationship that could be terminated for any reason." *Id.* Although it may have personally harmed Cook to fire her own grandson, Knight would have no legal recourse against his grandmother, which indicates an employee relationship.

The third *McKissic* factor, the job is of such a nature that the worker relies on payment for living expenses, does not clearly support either independent contractor or employee. Knight testified that he worked between 35 to 60 hours a week for Bear Affair before his accident, which would indicate that he relied on such income for his living expenses. But, he also testified that he received income from tree trimmings in addition to his income from Bear Affair. Also, Cook testified that she would sometimes give Knight items as payments for his work, which indicates that he did not rely on the payment for his living expenses. The record does not contain enough evidence to definitely state that plaintiff's sole source of income was from Bear Affair such that he relied on the job for his living expenses.

In contrast, the fourth and fifth *McKissic* factors most certainty support a finding that Knight was an employee; Knight did not use his own equipment and material in the course of his work for Bear Affair. Knight used Bear Affair's vehicles to drive to and from the meets. And at the meets, Knight sold Bear Affair's products, not his own. He did not use his own vehicle, materials, or tools, like a typical independent contractor might do. Also, Knight did not hold himself out to the public like an independent contractor might do. Knight did not advertise himself as a salesman, willing to sell any product for any company that was willing to contract with him. He only sold products for Bear Affair at times mutually agreed upon. Although he did lawn care

for both Bear Affair and another company, he did not present himself as a lawn care business that anyone could hire. So these *McKissic* factors also support a finding of employee.

The sixth *McKissic* factor, whether the work Knight performed would be customarily performed as an independent contractor, has no particular bearing on the question here, as there is no evidence one way or the other. The factor is, therefore, irrelevant here.

For the seventh *McKissic* factor and the first and second *Adanalic* factors, the payment of wages and control of Knight's duties do not clearly indicate an employee or independent contractor status. Auto Owners argues that Cook's lack of supervision of Knight indicated an independent contractor status, but the lack of supervision is better characterized as a delegation of duties to an employee rather than a lack of control. For payment of wages, the lack of formality does indicate an independent contractor status; the lax time keeping and distribution of payment would seem to be more common with an independent contractor than a formal employer-employee relationship. But, Knight was paid by the hour and not by the job, which supports a finding of employee status. As for a lack of W-2, such absence of form indicates an employer who does not strictly follow all formalities, especially when several other workers may not have received W-2s within the last several years due to a loss in bookkeeper.

For the eighth *McKissic* factor, the reasoning used in *Duckworth* is applicable: the objective of MCL 500.3114(3) would be effectuated by ruling that Knight was an employee, thus making Auto Owners first in priority. Auto Owners, by issuing insurance covering a company vehicle, knew in advance the scope of the risk of insuring a company vehicle that could be used by workers for interstate travel. *Duckworth*, 333 Mich App at 202. "The cases interpreting [MCL 500.3114(3)] have given it a broad reading designed to allocate the cost of injuries resulting from use of business vehicles to the business involved through the premiums it pays for insurance." *Celina Mut Ins Co v Lake States Ins Co*, 452 Mich 84, 90; 549 NW2d 834 (1996). Here, the statute would be better effectuated if Auto Owners, as insurer of the company vehicle involved in the accident while the driver was performing company business, was first in priority, rather than the insurers of vehicles in the driver's household, which were not involved in the accident.

Most importantly, the second *McKissic* factor and the fourth *Adanalic* factor indicate that Knight is an employee: Knight was performing work that was an integral part of the business when he was injured. Auto Owners argues that Knight was not integral because he performed other job duties, such as lawn and fish care, and because Bear Affair did not replace him after his accident. Auto Owners focuses on the wrong circumstance here. "The question is not whether the particular worker is integral to the business but instead whether the *type of work* is integral to the business." *Duckworth*, 333 Mich App at 216. Knight was returning from a meet where he sold Bear Affair's products, which was integral to Bear Affair's business as a merchant. Although Knight performed some work that might not be integral, significant weight should be given to the evidence that he was performing integral work when the accident occurred. Therefore, this factor, in combination with the other factors, supports a finding that Knight was an employee.

Because the factors indicate that Knight was an employee, the Wayne County trial court's denial of summary disposition is affirmed and the Washtenaw's County trial court's grant of summary disposition is reversed. As a result of reversing the Washtenaw County trial court's

decision, we do not reach GEICO's argument that the Washtenaw County trial court erred in denying GEICO and State Farm's motion for reconsideration.

### III. CONCLUSION

Using all relevant factors for the economic-reality test, the totality of the circumstances supports a finding that Knight was an employee of Bear Affair. The Washtenaw County trial court displayed apprehension to elevate what it saw as an informal family relationship to an employee relationship. But, the trial court cannot forgo an analysis under the economic-reality test when deciding whether a worker is an employee or independent contractor simply because there are familial ties between the worker and the employer. See *Michigan Occupational Safety & Health Admin v Yoder Family Farm*, 343 Mich App 77, 91-92; 996 NW2d 808 (2022). Knight was an employee of Bear Affair at the time of the accident for purposes of MCL 500.3114(3). Therefore, the Court affirms the Wayne County trial court's denial of summary disposition and reverses the Washtenaw County trial court's denial of summary disposition.

Affirmed in part, reversed in part, and remanded. We do not retain jurisdiction.

/s/ Brock A. Swartzle
/s/ Kristina Robinson Garrett
/s/ Randy J. Wallace